**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 21-CR-108 (TSC)** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL JOSEPH FOY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S EMERGENCY BOND REVIEW MOTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to defendant's emergency bond review motion and state that the defendant should be detained pending trial pursuant to 18 U.S.C. §§ 3142(f)(1)(A) [Crime of Violence] and 3142(f)(1)(E) [Dangerous Weapon].[1] The United States opposes release because, in view of the factors outlined in 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e). The government respectfully requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

---

[1] The defendant is charged with using a dangerous weapon during his efforts to obstruct Congress and commit civil disorder, therefore, the government is also requesting that the Court consider detention under 18 U.S.C. § 3142(f)(1)(E).

1

**Factual Background**

**The Attack on the United States Capitol on January 6, 2021**

The United States Capitol is secured 24 hours a day by the U.S. Capitol Police. Restrictions around the U.S. Capitol include permanent and temporary security barriers and posts manned by U.S. Capitol Police. Only authorized individuals with appropriate identification are allowed access inside the U.S. Capitol. On January 6, 2021, the exterior plaza of the U.S. Capitol was also closed to members of the public.

On January 6, 2021, a joint session of the United States Congress convened at the U.S. Capitol, which is located at First Street, S.E., in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the U.S. Capitol to certify the vote count of the Electoral College for the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Then-Vice President Michael Pence, who was also the President of the Senate, was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. As noted above, temporary and permanent barricades were in place around the exterior of the U.S. Capitol Building, and U.S. Capitol Police ("USCP") were present and attempting to keep the crowd away from the U.S. Capitol Building and the proceedings underway inside. Officers from the

2

Metropolitan Police Department of the District of Columbia ("MPD") also responded to the U.S. Capitol to assist USCP in protecting the Capitol.

At such time, the certification proceedings were still underway and the exterior doors and windows of the U.S. Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the U.S. Capitol; however, shortly after 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of both USCP and MPD, as others in the crowd encouraged and assisted those acts.

At approximately 2:20 p.m., members of the United States House of Representatives and United States Senate, and Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m. Vice President Pence remained in the U.S. Capitol from the time he was evacuated from the Senate Chamber until the sessions resumed.

During the course of the violent protests, many individuals were armed with weapons including bats, pepper spray, sticks, zip ties, as well as bulletproof vests and anti-tear gas masks. Other individuals stole items from officers protecting the Capitol – including pepper spray and riot shields – and turned those items into makeshift weapons to be used against the officers. During the course of the violent protest, over 100 law enforcement officers reported being assaulted or injured by these violent protesters while attempting to protect the U.S. Capitol and the individuals inside of the building. These assaults occurred both inside the U.S. Capitol, as well as on the steps just outside the U.S. Capitol Building and throughout the grounds of the U.S. Capitol.

For his conduct on January 6, 2021, Foy is now charged by Indictment with: (1) ) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (2) Obstruction of an Official Proceeding, in violation of 18 U.S.C.

§§ 1512(c)(2) and 2; (3) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (4) Knowingly Entering or Remaining in any Restricted Building or Grounds With a Deadly Weapon in violation of 18 U.S.C. § 1752(a)(1)(2) and (4), and; (5) Act of Physical Violence on the Capitol Grounds, in violation of 40 U.S.C. §§ 5104(e)(2)(F).

### Foy's Violent Conduct and Assaults on Officers on January 6, 2021

As previously stated by the government, defendant Foy came to Washington D.C. to participate in the violent insurrection against the government of the United States, despite his oath he took as a former Marine to support and defend the Constitution of the United States. Based on the evidence and the defendant's violent actions and attacks on law enforcement officers protecting the U.S. Capitol, defendant Foy willfully and deliberately brought a hockey stick - a deadly weapon, with him and used that weapon to repeatedly strike law enforcement officers in the face, head, neck, and body area. Additionally, based on a review on the relevant photos and videos of defendant Foy, he is seen encouraging other rioters to assault to officers as well to join him when he crawled through a destroyed window and into the Capitol of the United States, weapon in hand.[2]

Defendant Foy's violent assault occurred in what is called the Lower West Terrace of the U. S. Capitol Building. The Lower West Terrace, which is a widely recognizable area of the Capitol Building, is located directly in the front-center of the building, facing the Washington Monument. The Lower West Terrace is a very visible area of the Capitol Building that, in public perception, is often used for symbolic or patriotic events, such as presidential inaugurations or the "Capitol Fourth" concert that is annually held on the Fourth of July. Indeed, on January 6, 2021, the Lower West Terrace was undergoing preparation for the inauguration of now-President Biden.

---

[2] When defendant Foy was arrested at his home on January 21, 2021, officers found the hockey stick defendant Foy used and the hat he wore during the riot at the U.S. Capitol in his residence in Michigan.

Scaffolding had been erected for the media, and stairs, risers, and other flooring was in place to create the stage area upon which the inauguration would take place.

In the center of the Lower West Terrace is an archway with a short set of stairs that leads to a set of double doors; those doors permit entrance directly into the Capitol Building.[3] At around 2:30 p.m., a large group of MPD and USCP officers assembled to protect the Lower West Terrace entrance from an advancing mob. That specific entrance was the site of some of the heaviest violence on January 6, 2021, as the mob of rioters, including defendant Foy, battled with police officers on-and-off from approximately 2:40 p.m. to 5:15 p.m. Over a period of about two-and-a-half hours, groups of rioters came in waves and gathered in the archway and tunnel as they attempted to violently breach the police line to gain entrance into the U.S. Capitol. On multiple occasions throughout that period, rioters overran the archway and physically battled with police officers inside the tunnel, directly at the U.S. Capitol entrance. At other times, officers were able to push the group of rioters out of the tunnel – away from the doors – and out onto the Lower West Terrace. Despite the police orders to leave the area, defendant Foy, and others, continued his assault on the officers in an effort to, at a minimum, to cause serious bodily injury to the officers.

More broadly, defendant Foy violently attacked officers while attempting to break through the center doorway on the Lower West Terrace to gain entrance to the U.S. Capitol Building. He used physical violence against officers who were protecting the entrance, and his individual participation in the larger mob heightened the overall violence and dangerousness of the day.

---

[3] Since January 6, 2021, this area has become colloquially known as "the tunnel." On January 6, 2021, the stairs leading from the Capitol doors down to the Lower West Terrace had been covered by a platform so that the tunnel floor was flush. At the entrance to the tunnel, stairs then led down to the Lower West Terrace itself. In the past, President-elects, including now-President Biden, walked through the Lower West Terrace entrance doors and the tunnel, and then down the stairs to the inauguration stage.

Indeed, defendant Foy brought his weapon –a hockey stick- to use to the U.S. Capitol. Images and video taken at the U.S. Capitol show the mob attacking officers guarding the doors. Defendant Foy and others hurl projectiles at the officers and physically assaulted them, often using weapons like poles, bottles, and in defendant Foy's case, a hockey stick. Moreover, several officers were dragged into the crowd where they were stripped of their protective gear and beaten. Others used crowbars and various tools to knock the windows out of the U.S. Capitol so that unlawful individuals could enter. In the photos or screen shots of available videos below the Court can see the defendant's actions and the brutal attacks on law enforcement officers he inflicted:



**Above photos of defendant Foy and his hockey stick in D.C. on January 6, 2021**



**Above photo of defendant Foy throwing a sharpened pole at Police Officers**





**Above photos of defendant Foy—leading the charge—strikes police officers numerous times with his hockey stick, including downed officers**



**Above photo from BWC video of defendant Foy winds up and swings over and at downed officers**

8



**Above photos of defendant Foy rallying others and unlawfully entering the U.S. Capitol**



**Above photo of defendant Foy unlawfully entering the U.S. Capitol**





**Above photos of defendant Foy rallying others and attacking officers at U.S. Capitol**



1.



**Above photos shows defendant Foy unlawfully inside the U.S. Capitol and carrying hockey stick and rallying others to unlawfully enter the U.S. Capitol**



Moreover, regarding the immediate photo above: this photograph was taken from Foy's cell phone after his arrest which shows some of the rioters standing in the Capitol, glass on the carpet, tables overturned, destruction evident.

## **ARGUMENT**

By reason of the grand jury's decision to charge defendant, *inter alia*, with a crime of violence, there is a presumption in the Bail Reform Act that the defendant should be detained pending trial as a danger to the community. 18 U.S.C. 3142(e). This presumption and subsequent Indictment are reinforced strongly by the facts of the case, as outlined *supra* and below.

Once a rebuttable presumption has been triggered, "the presumption operate[s] at *a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption" *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original); *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (the presumption in § 3142(e) "are 'rebutted' when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"), quoting *United States v. Dominguez*, 783 F. 2d 702, 707 (7th Cir. 1986); *United*

*States v. Rodriguez*, 950 F. 2d 85, 88 (2d Cir. 1991) ("[A] defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption."), citing *United States v. Matir*, 782 F.2d 1141, 1144 (2d Cir. 1986). While the burden of production may not be heavy, *see Unites States v. Stricklin*, 932 F.2d 1353, 1355 (10th Cir. 1991), the applicable cases all speak in terms of a defendant's obligation to introduce "evidence." Moreover, even if the defense does submit such evidence, the presumption remains as a factor that may be considered by the Court, among others, in determining whether the defendant should be detained, and the presumption retains "evidentiary weight." *United States v. Dillon*, 938 F.2d 1412, 1416 (1st Cir. 1991) ("When a defendant produces such evidence, however, the presumption does not disappear. The burden of persuasion remains on the government and the rebutted presumption retains evidentiary weight") (citations omitted).

As the court explained in *United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011), even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely:

> At oral argument, defendant's counsel posited that the rebuttable presumption function as a "bursting bubble" that ceases to exist once a defendant produces any credible evidence. Although the D.C. Circuit has not expressly ruled on this issue, circuits that have considered the issue require using the presumption as a factor even after the defendant has produced credible evidence as do judges of this Court.

*Id*. at 388 n.2 (internal citations omitted), citing *United States v. Bess*, 678 F. Supp. 929, 934 (D.D.C. 1988) ("[The presumption] is incorporated into the § 3142(g) factors considered by the court when determining whether conditions of release can be fashioned or whether the defendant must be detained pretrial."); *see also United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010)

("Even when a defendant satisfies his burden of production, however, 'the presumption favoring detention does not disappear entirely but remains a factor to be considered among those weighed by the district court.'"), quoting *United States v. Mercedes*, 254 F. 3d 433, 436 (2d Cir. 2001); *Portes*, 786 F. 2d at 764 ("[Use] of [the word rebutted] in this context is somewhat misleading because the rebutted presumption in not erased. Instead, it remains in the case as an evidentiary finding militating against release, to be weighted along with other evidence relevant to factors listed in §3142(g)."), quoting *Dominguez,* 783 F. 2d at 707. Clearly, the defendant has not and cannot overcome this presumption for detention.

Specifically, "[i]n determining whether the release of a defendant would endanger the community, the court must consider any available information concerning the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; the weight of evidence against the person; various personal information including character, employment, past conduct, and so on; and the nature and seriousness of the danger to any person or the community that would be posed by the person's release." *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

## Nature and Circumstances of the Offenses Charged

Defendant Foy's violent and deliberate participation in the mob's efforts to break into the U.S. Capitol Building by assaulting police officers weighs heavily in favor of detention. During the course of the January 6, 2021, siege of the U.S. Capitol, over 100 law enforcement officers were assaulted by an enormous mob, which included numerous individuals with weapons – including this defendant, bulletproof vests, and pepper spray who targeted the officers protecting the U.S. Capitol. Additionally, the violent crowd encouraged others in the mob to work together

to overwhelm law enforcement and gain unlawful entry into the U.S. Capitol. In the Lower West Terrace tunnel that day, USCP and MPD officers worked for almost three hours defending the U.S. Capitol Building. Officers spent much of that time under physical attack by a violent crowd – including by defendant Foy – with a total disregard for the officers' safety and with an intent to harm the officers by repeatedly assaulting officers at the front of the police line in an effort to break through the line and into the U.S. Capitol Building. The officers in that line were in full uniform, with clear and visible markings identifying themselves as officers.

It is without question that defendant Foy chose to unlawfully enter the U.S. Capitol Grounds on January 6, 2021, for the stated purpose of preventing Congress from completing its constitutional duty of certifying the results of a lawful election. He selected one of the most visible and violent locations in which to do so. Defendant Foy violently used his hockey stick to attack officers to cause harm to them and to hurt them with each blow he inflicted. His violent assault on the officers was persistent and unrelenting. In the videos capturing his actions, defendant Foy willfully struck law enforcement officers again and again in an effort the harm them.

Moreover, defendant Foy's conduct did not stop at his own individual decision to engage in physical violence. It extended to his active encouragement of other rioters to continue to try to break through the police line and into the building. Defendant Foy's willing and repeated participation in violence against police officers protecting a lawful proceeding of Congress, for which he is charged with multiple felonies – including crime of violence – weighs heavily in favor of detention. Not only was his individual conduct and encouragement to others violent and dangerous, but his actions heightened the overall violence and dangerousness of the day. As stated by Chief Judge Beryl A. Howell, "[t]he actions of this violent mob, particularly those members

15

who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law." *See United States v. Chestman*, 21-mj-218 (BAH), ECF No. 23, at *13, 16 (D.D.C. Feb. 26, 2021) ("Grave concerns are implicated if a defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification"). Here, the defendant violently attacked law enforcement officers who with their heroic efforts were attempting to protect the U.S. Capitol and all who were inside.

### Weight of the Evidence against the Defendant

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. The evidence against defendant Foy is very strong and compelling. Defendant Foy does not question that fact of his identity in this case. Significantly, defendant Foy was captured in multiple BWC and open-source videos that clearly showed him violently attacking officers who were defending the U.S. Capitol that day. Defendant Foy's face and his violent actions are visible in multiple videos, as are his hockey stick, hat and green jacket that he wore on January 6, 2021. The government respectfully avers that there is not a doubt of the defendant's violent assaults on officers as this Court views the evidence and the below photos and DVD of Government's Exhibits #1-5, submitted to the Court.[4]

### Defendant's History and Characteristics

The United States submits that defendant Foy's history and characteristics demonstrate that he would be a danger to the community if released. The government acknowledges that defendant

---

[4] Undersigned counsel for the government has provided the Court and counsel for the defendant one DVD that contains Government's Exhibit # 1-5 – which are five short videos of defendant Foy's violent assaults on law enforcement officers on January 6, 2021.

Foy does not have a criminal record, at first blush, appears to favor release. Nevertheless, his actions on January 6, 2021, was a considered decision to place himself above the law; not only did he demonstrate an unwillingness to follow lawful orders, but he also showed a blatant disregard for his commitments to those in authority.

The United States submits that defendant Foy's conduct on January 6, 2021, demonstrated an utter disregard for the law and the legitimate functions of government, providing clear and convincing evidence that he is unwilling to follow lawful orders or defer to the legitimate authority of the government. When defendant Foy assaulted law enforcement officers in his attempt to storm the U.S. Capitol, he did so in the presence of hundreds of law enforcement officers who were working to protect both the constitutionally-mandated Certification proceeding and the members of Congress duty-bound to hold that proceeding. Simply stated, if defendant Foy is unwilling to obey orders while in full view of law enforcement, or to conform his behavior to the law even when he disagrees with it, despite his prior oath to the Constitution, it is unlikely that he would adhere to this Court's directions and release orders.

### Danger to the Community

The fourth factor, the nature and seriousness of the danger to any person or the community posed by a defendant's release, also weighs in favor of defendant Foy's detention. Defendant Foy's dangerousness is illustrated by his highly-public assault of officers at the U.S. Capitol Building. *See Chestman*, at *30 ("Nearly as significant is defendant's use of force to advance towards the Capitol and his use of words to lead and guide the mob in obstructing the police and pushing against police barriers"). Consequently, the United States is gravely troubled and very concerned by the nature of the allegations against him, and his potential threat to others if released.

17

Given the above assessment of all four relevant factors, there is clear and convincing evidence that there are no conditions or combinations of conditions which can effectively ensure the safety of any other person and the community and reasonably assure the appearance of the defendant, pursuant to 18 U.S.C. § 3142(e).

Moreover, January 6, 2021, was not defendant Foy's first election conflict: on November 6, 2020, defendant Foy joined a mass demonstration with others at the TCF Center in Detroit, Michigan, to protest the recent 2020 Presidential Election results in Michigan where workers were inside counting absentee ballots. Significantly, the government avers that the defendant's actions as a whole demonstrates to this Court that the defendant is a danger to the community if released.



Michael **Foy** of Wixom holds his flag open while standing above the crowd gathered for a rally in support of President Trump outside of the TCF Center in Detroit on Friday, Nov 6, 2020 where the absentee ballot count for the city of Detroit took place. Trump supporters gathered to express their concern for the results after Democratic Presidential Candidate Joe Biden won the State of Michigan turning the state blue.
RYAN GARZA, DETROIT FREE PRESS

### **Defendant's Statements in his Motion are Unfounded**

In his emergency bond review motion defendant Foy attempts, without any legal or factual support, to cast himself as a modern day protector of others is simply unfounded and the government respectfully avers is insulting to all the heroic actions of law enforcement officers who were protecting the U.S. Capitol on January 6, 2021. Indeed, defendant Foy's argument is an

offense to all the men and women in law enforcement who were protecting the U.S. Capitol that the defendant now suggest that, "[he] is innocent of assault because his actions were legally justifiable. He saw individuals in imminent danger of bodily harm and used a reasonable amount of force to protect and defend those people who were being trampled." *See* Defendant's Motion at 2. Also, the defendant falsely claims that he "acted in defense of others in using non-deadly force," *see*, Defendant's Motion at 13, simply belies the true facts of this case and the defendant's violent actions. The evidence will show that the defendant by using his hockey stick to strike law enforcement officers was a use of a deadly weapon. Based on this evidence, the defendant's actions were violent perpetrated to cause harm to law enforcement officers who were protecting our seat of democracy.

In addition, defendant Foy mentions strong family support and community ties. *See*, Defendant's Motion at 1, and 14. However, regarding family or "community ties," the framers of the Bail Reform Act thought differently. The Committee also noted with respect to the fact of community ties that it is aware of the growing evidence that the presence of this factor does not necessarily reflect a likelihood of appearance, and has no correlation with the question of the safety of the community. S.Rep. No. 225, 3207. Nor is it clear why his family support now, would stop the defendant from committing other violent acts as described above, nor will community ties keep him from doing so again. Therefore, these arguments are wholly without merit and are not supported by the facts and legal considerations found in the instant matter.

## <u>CONCLUSION</u>

These above-noted facts and circumstances, in consideration of the factors enumerated in 18 U.S.C. § 3142(g), demonstrate that defendant Foy is a risk of flight and a danger to the

community. Accordingly, the United States requests that the defendant be detained without bond pending trial. The reasons submitted by the defendant in his request for an emergency review of his bond status, such as his ties to the community or his family ties are simply not enough to overcome the facts as outlined in this case nor has he overcame the presumption for detention. Therefore, this Court should deny the defendant's emergency bond review motion and to detain defendant Foy pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: */s/ Emory V. Cole*
EMORY V. COLE
Assistant United States Attorney
PA. Bar Number 49136
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7692
Emory.Cole@usdoj.gov

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2021, I caused a copy of the foregoing to be served on

counsel of record via electronic filing.

_/s/ Emory V. Cole_____
Emory V. Cole
Assistant United States Attorney