UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :

    v.                              :        1:21-CR-108 (TSC)

MICHAEL FOY                 :

### DEFENDANT'S REPLY TO THE GOVERNMENT'S OPPOSITION TO HIS EMERGENCY BOND REVIEW MOTION

Michael Foy respectfully replies to the Government's Opposition to his Bond Review Motion. In support of his Motion, Mr. Foy states the following.

### Introduction

The government's Opposition misleadingly attempts to assign to Mr. Foy all of the illegal conduct alleged against all of the individuals who went to the U.S. Capitol on January 6th. See e.g. ECF 11 at 5 ("the mob of rioters, including defendant Foy, battled with police officers on-and-off from approximately 2:40pm to 5:15pm.). The government also repeatedly claims, without basis, that Mr. Foy "rall[ied] others to enter the Capitol and to attack officers. The government even charged Mr. Foy with Obstruction of a Proceeding, even though that proceeding was stopped at 2:20 pm and they have produced no evidence that he was on the Capitol grounds until around 4pm. All of these allegations reflect a disturbing pattern of a prosecution strategy that has lobbed conclusory allegations at Mr. Foy without providing him discovery or even offering specific evidence of *his* conduct to the Court. On this record and in reality, the government has not offered any proof that Mr. Foy was even present at the Capitol at the time people evacuated. The government has not proffered a single word stated by Mr. Foy, either at the Capitol or any time before or after, that suggests that he was inciting, rallying or encouraging others to violence. The

1

evidence upon which they rely – photographs with Mr. Foy's mouth open – fails to provide the Court with even a scintilla of evidence that Mr. Foy was somehow rallying others. Lastly, the government meekly responds to the undisputed facts demonstrating that Mr. Foy acted in defense of others by replacing legal and factual analysis with embellished outrage. In the end, the government does not dispute the facts most important to this Motion. Mr. Foy was not part of any organization. There is no evidence that his actions were premeditated. And outside of the 25 seconds during which people were being crushed and smothered, there is no evidence that he acted in a violent manner towards any people or even any property. Mr. Foy's actions in those 25 seconds were justified. He is not a dangerous person and he should not be preventatively detained.

## Argument

### I. The government cannot demonstrate, by any standard of proof, that Mr. Foy was not acting in defense of others.

The government does little to respond to the Defendant's arguments about two of the four Bail Reform Act factors, stating simply that Mr. Foy could not be acting in defense of others because his actions were "violent." But under the proper legal analysis, the degree of force used does not automatically eliminate a defense of others or self-defense. Instead, an individual may even use the most "violent" force, *i.e.* deadly force if confronted with the imminent threat of serious bodily harm. For non-deadly force, as was used here, it is only required that an individual acts reasonably in response to imminent bodily harm.

The government's lack of response to the facts supporting Mr. Foy's defense of others is telling. The government does not deny, nor can it, that Mr. Foy was surrounded by people who were actually being physically harmed, including one person who died from that harm. The government does not deny, nor can it, that Mr. Foy was peaceful outside of the time that others were being crushed at his feet. Mr. Foy used a reasonable amount of force to defend those people

and the government has provided no reasonable argument that he did not.

## II. Other Capitol cases demonstrate that Mr. Foy should be released.

As stated in Mr. Foy's Motion, the government has not sought detention for individuals who were demonstrating outside or even inside the Capitol. The government has not requested detention for individuals charged with various felony offenses, including Obstruction and Assault on a Federal Officer. Upon close inspection, even defendants who have been accused of similar or more destructive conduct have been released. Below is a catalog of some of those cases.

1. *United States v. Chad Jones*, 1:21-mj-00076-ZMF –Mr. Jones is also charged under section 111(b), alleging the use of a deadly or dangerous weapon or infliction of bodily injury. Mr. Jones's intent was on display when he used a flagpole to repeatedly and forcefully strike and break the glass of the doorway where Ashley Babbitt was shot and killed as she climbed through a broken pane. (Mr. Foy is not alleged to have used any force inside the Capitol building, not with the hockey stick or anything else and not against anything or anybody). Just before Mr. Jones started breaking down the glass, lawmakers and staff were seen on the other side of the doors from the angry mob, being evacuated. Below is a still shot from the complaint against Mr. Jones in a red jacket in which he is shown breaking the glass with the pole moments before Babbitt is shot. The complaint states: "An officer inside the Speaker's Lobby, facing the door with a gun raised, can be seen at the [left] side of the video in the close vicinity of the doorway," as shown below.





As the officer points the gun and fires at Ms. Babbitt, Jones could still be seen next to the door with the pole, just to the left of where Ms. Babbitt was shot. The government did not request Mr. Jones's detention and Magistrate Judge Harvey released him on special conditions.

2. *United States v Vitali Gossjankowski*, 1:21-cr-00123-PLF – According to the Indictment, Mr. Gossjankdowski (pictured in a royal blue jacket below) has been charged under 18 U.S.C. § 111(b) for assaulting a federal officer with a dangerous weapon (a Taser) after being videotaped trying to forcefully and violently enter a restricted area of the Capitol and activating the Taser multiple times.

4



The complaint describes that an officer near Mr. Gossjankowski suffered a heart attack and was hospitalized after being Tased multiple times on the back of his neck. While Mr. Gossjankowski said he recognized the officer during an interview, he denied using the Taser on him. He is also charged with section 1752 offenses for being in restricted areas of the Capitol while carrying or using a dangerous weapon. The government did not object to his release.

3.      *United States v. Matthew Miller*, 1:21-cr-00075-RDM –Mr. Miller was charged with ten offenses, including assault on a federal officer under section 111(b), the lead charge against Mr. Foy.  Mr. Miller allegedly discharged a fire extinguisher, as captured in the image below. He is also accused of using a crowd barrier fence as a makeshift ladder to scale the walls of the Capitol. Mr. Miller was also charged with offenses under section 1752 involving use or carrying of a dangerous weapon.



4.     *United States v. Rachel Powell*, 1:21-mj-00197-GMH – Ms. Powell, known in the press as the "bullhorn pink hat lady" in the press, was filmed using a battering ram to break a large window of the Capitol so that she and others could force their way into the Capitol, as shown in the image below from her complaint.



Ms. Powell was also filmed using a bullhorn to direct people inside the Capitol toward lawmakers, seeming to have detailed knowledge of the floor plan, as shown below.



Among other charges, Ms. Powell is accused of entering or remaining in a restricted area with a dangerous weapon. Ms. Powell was released by a magistrate judge in the Western District of Pennsylvania. The government appealed the release order, but Chief Judge Howell denied the appeal.

5. *United States v. Robert Packer*, 1:21-cr-00103-CJN – Mr. Packer was photographed inside the Capitol wearing a "Camp Auschwitz" t-shirt, suggesting anti-semitic beliefs and endorsement of the Holocaust, as shown in the image below from his complaint.



Mr. Packer was charged with entering or remaining in a restricted building and violent entry and disorderly conduct on Capitol grounds. He was previously convicted of forging public records, driving under the influence, driving without a license, and had a warrant for failing to appear in court. The government did not request pretrial detention of Mr. Packer.

6. *United States v. Mark Leffingwell*, 1:21-cr-00005-ABJ – Mr. Leffingwell was charged with assault on a federal officer under section 111, as well as several counts under 18 U.S.C. § 1752(a) and 40 U.S.C. § 5104(e)(2). Mr. Leffingwell allegedly pushed past a wall of law enforcement officers who were attempting to keep people out of the Capitol and then repeatedly punched an officer with a closed fist. Mr. Leffingwell did not raise any facts justifying his conduct. The government did not object to Mr. Leffingwell's release on conditions.

7. *United States v. Joseph Biggs*, 1:21-mj-00126-RMM – Mr. Biggs is an admitted member of the Proud Boys, an extremist group described in Mr. Biggs's by the government as a "pro-Western fraternal organization for men who refuse to apologize for creating the modern world; aka Western chauvinists." Mr. Biggs posted a plan on social media for the Proud Boys to go to D.C. on January 6, 2021, but not to wear their distinctive black and yellow, saying "we are

going to blend in like you" (referencing Antifa). He is alleged to have been at the front of the crowd who breached the Capitol and to have entered the Capitol within 20 seconds of its breach. He appeared to have been wearing an earpiece and carrying a walkie-talkie for communication purposes (and presumably coordination with other Proud Boys) during the riot. He was released in the Middle District of Florida and it does not appear that the government appealed his release.

8. *United States v. Matthew Capsel*, 1:21-mj-00122-RMM – Mr. Capsel was charged with assaulting a federal officer. Mr. Capsel was captured on video fighting against National Guardsmen attempting to hold a boundary with riot shields, as shown below in an image from his complaint. There is no evidence supporting a justification defense for Mr. Capsel. Mr. Capsel persisted in fighting until he was pepper sprayed.



The government's oral motion to detain Mr. Capsel was denied in the Southern District of Illinois. It appears that the government did not appeal Mr. Capsel's release.

9.  *United States v. Josiah Colt*, 1:21-cr-00074-TFH – Mr. Colt went to the rally on January 6 wearing tactical assault gear, including a helmet. He was infamously photographed scaling down the wall of the gallery in the Senate chamber, as shown below in an image from his complaint. According to the complaint, Mr. Colt claimed in a Facebook video that he was the first person to sit in Speaker Pelosi's chair (which was actually Vice President Pence's chair) and calls her a traitor. The government did not seek Mr. Colt's detention.



10. *United States v. Christopher Alberts*, 1:21-cr-00026-CRC – Mr. Alberts was stopped on Capitol grounds on January 6, 2021, after the emergency curfew, when a law enforcement officer noticed a bulge on his hip that turned out to be a handgun with a fully loaded high-capacity magazine. He also carried a spare magazine in a holster on his other hip and was wearing a bullet-proof vest. In his backpack, he was carrying a gas mask, a military-style meal-ready-to-eat (MRE), and a first aid kit. The government's oral motion to detain Mr. Alberts was denied and he was released by Magistrate Judge Harvey.  The government did not appeal.

11. *United States v. Nicholas DeCarlo and Nicholas Ochs*, 1:21-cr-00073-BAH

10

Messrs. DeCarlo and Ochs are charged with conspiring with each other and other persons to stop Congress's certification of the election results. Mr. Ochs is a founding member of the Proud Boys Hawaii chapter with the group's name tattooed on his arm. They engaged in planning, fundraising, and forcibly stormed past barricades. In a video on social media, DeCarlo stated that he came to DC to stop the vote counting. Another video of the two of them is titled "Twas the Night Before REVOLUTION!!!" They are alleged to have defaced the Memorial Door of the Capitol with the words "Murder the Media," as shown below in an image from Mr. DeCarlo's complaint.



Ochs is charged with stealing flex cuffs from a Capitol police officer. Ochs posted a picture of them on social media showing them smoking cigarettes in the Capitol. The government did not seek their pretrial detention.

12.     *United States v. Matthew Council*, 1:21-mj-00008-GMH – Mr. Council is alleged to have forced his way through a police line inside the Capitol during which process he pushed a female uniformed Capitol police officer and had to be pepper sprayed. There were no facts alleging that Mr. Council's actions were justified.  The government did not seek Mr. Council's detention.

13.     *United States v. Gina Bisignano*, 21-cr-00036-CJN –Ms. Bisignano is accused of being an

"instigator, a director, and an active participant in the violence, destruction and obstruction at the Capitol" on January 6. ECF No. 12 at 1. On the front lines of the crowd pushing against the police line, as pictured below, she allegedly shouted through a bullhorn things like: "Everybody, we need gas masks! We need weapons! We need strong, angry patriots to help our boys!"



Among her eight charges, she is charged in her Indictment with destruction of government property. After she was released in her home district, Judge Nichols denied the appeal and ordered Ms. Bisignano to be released.

14.     *United States v. Jenny Cudd,* 21-mj-00068-TNM – Ms. Cudd is alleged to have been inside the Capitol without authorization. According to the Complaint, after leaving the Capitol, Ms. Cudd livestreamed a video in which she stated, "I was here today on January 6th when the new revolution started in the Capitol." In describing her entrance, she further stated, "we just pushed, pushed, and pushed, and yelled go and yelled charge." She also said, "fuck yes, I am proud of my actions, I fucking charged the Capitol today with patriots today. Hell, yes, I am proud of my actions." She later told a local news station during an interview, "Yes, I would absolutely do it again." The government did not seek Ms. Cudd's detention. Moreover, on February 4, 2021, the Court granted

Ms. Cudd's motion to travel to Mexico to participate in a work-related retreat, which neither the government nor Pretrial Services opposed.

15.     *United States v. Bruno Cua,* 21-cr-00107-RDM – Mr. Cua entered into Senate chamber floor, armed with a baton and is alleged to have pushed officers. Prior to January 6th, he made numerous posts on social media imploring others to abandon peaceful protests and to bring weapons to Washington D.C. on January 6th. Subsequent to January 6th, he posted on social media and bragged about "fighting his way into the Capitol." Mr. Cua was released into third party custody after the appeal of the Magistrate Court's detention order.



Mr. Foy's actions were limited and indicated no characteristics of a person so dangerous that he must be incarcerated. Specifically, Mr. Foy: 1) never coordinated with any individual in a premeditated plan to disrupt proceedings; 2) was not wearing tactical gear and did not have possession of masks or armor to suggest he anticipated a violent conflict; 3) did not decide to go to Washington D.C. until the early morning hours of January 6th; 4) did not promote or celebrate efforts to disrupt the election certification; 5) did not brag about the events at the Capitol on January 6th; 7) did not incite others to attack the Capitol or officers before, during or after the incident; and 8) did

not, after the fact, discard any evidence or identifying items in an attempt to evade law enforcement.

Instead, Mr. Foy's actions are consistent with an individual who went to Washington D.C. to protest, witnessed individuals who were being trampled and used reasonable force to assist those individuals. His actions were justified and within that 25 second period. Nothing about his nature, his character or his actions relating to this case render him particularly dangerous. As a result, the government cannot demonstrate, by clear and convincing evidence, that Mr. Foy needs to be incarcerated for the community to be safe.

### III. Preventative detention is especially inappropriate because the Government has indicated that it does not wish to abide by the Speedy Trial timeframe in Capitol cases.

Finally, it should be noted that the Government has not demonstrated the willingness to pursue this case under the timeframe set forth under the Speedy Trial Act. As in many of these cases, Mr. Foy has not received a single piece of discovery, other than those exhibits that were filed in litigation. The government has signaled an intent in Capitol cases to "hit the brakes" on litigation as it becomes clear that the prosecution had not determined even how to provide basic discovery before rushing to charge individuals.

https://www.politico.com/news/2021/03/12/prosecutors-capitol-riot-investigation-475505 (last accessed March 13, 2021). The government has proposed Motions for Complex Case Designation, even in misdemeanor cases. All of this is to say that if the Government's requests are granted, individuals like Mr. Foy would not only be preventatively detained, they will be detained in cases where the Government has no apparent interest in abiding by the defendants' rights under the Speedy Trial Act.

**Conclusion**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481U.S. 739, 755 (1987); see also *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). The government has not demonstrated, by clear and convincing evidence, that there no conditions or combination of conditions that will assure the safety of the community. Mr. Foy respectfully requests that the Court release him.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500