**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **1:21-CR-108 (TSC)** |
| | ) | |
| **MICHAEL FOY** | ) | |

**MICHAEL FOY'S SECOND MOTION FOR RELEASE TO HOME CONFINEMENT**
**PENDING THE OUTCOME OF HIS CASE**

**INTRODUCTION**

Michael Foy ("Mr. Foy") is detained without bond at the Correctional Treatment Facility ("CTF"). He has been preventatively detained for approximately 100 days since January 24, 2021. This Court granted the government's request for pretrial detention, agreeing that there are no conditions or combination of conditions that will reasonably assure—not guarantee—the safety of the community. However, the Court has repeatedly warned the government that the Court's calculus would shift if the government was not in a position to provide Mr. Foy with a trial within the contours of his statutory and constitutional speedy trial rights. That limitation should now control. One hundred days into this case, Mr. Foy has received a small fraction of the discovery to which he is entitled and has received no *Brady* information relating to the defense of others that he raised in his initial bond review. Trial is nowhere in sight and Mr. Foy remains in custody, effectively in harsh solitary confinement due to coronavirus restrictions, at CTF. While these factors may not be determinative, they underscore the need for the government to identify a specific, "articulable threat" of dangerousness in order to justify preventative detention. *Munchel v. United States*¸ 991 F.3d 1273, 1283 (D.C. Cir. 2021). Under now controlling Circuit precedent, such an articulation must specifically explain why the danger exceeds the scope of the events on

January 6th, 2020. *See id.* The government has not done so in this case and—as district judges have done in other cases in which the defendants are alleged to have engaged in similar and substantially more violent acts than Mr. Foy—this Court should release Mr. Foy with conditions of supervision.

## Introduction

Mr. Foy is a veteran, an active reservist for the Marines, and a mechanic. He has never had a single arrest before this incident. Mr. Foy also suffers from documented mental illness. A mere two weeks before this incident, he was diagnosed, for the first time, with Major Depressive Disorder and Post-Traumatic Stress Disorder. Since Mr. Foy has been detained, he has been placed in effectively "a form of mass solitary confinement – without some of the basic services afforded even to those in solitary during normal times".[1] Individuals at CTF and the D.C. Jail have been locked down for 23 hours per day since April of 2020. When incidents occur – and there have been many – residents lose their one remaining free hour per day. For any individual, such conditions represent a "grave human rights abuse." *Id.* One Congressman described the conditions as the District "essentially torturing its inmates."[2]

For all District inmates, this means one hour of recreation time during which individuals must choose between showering, making calls to family, making calls to lawyers, exercise, and having their only interaction with other individuals. It means no social visits, video or otherwise, no grooming, no time in front of the television—none of the small decencies that make jail even a

---

[1] Peter Jamison, *Washington Post*, *An 'Insane' Lockdown Two Miles From the Capitol, With No End in Sight* (Apr. 19, 2021), https://www.washingtonpost.com/dc-md-va/2021/04/19/dc-jail-lockdown-covid/.

[2] Peter Jamison, *Washington Post*, *D.C. Officials Ignore Growing Pressure to End 23-hour Coronavirus Lockdown at the Jail* (Apr. 23, 2021) https://www.washingtonpost.com/dc-md-va/2021/04/23/dc-jail-covid-lockdown-officials/.

little bit bearable.  But for Mr. Foy, who was recently diagnosed with two significant mental health conditions, these conditions of confinement are uniquely detrimental and are, as one psychologist says, "very dangerous".  *Id.* (quoting Psychology Professor Craig Haney).  Despite mounting pressures, there are currently no plans in place to end universal solitary confinement at the Jail and CTF.

There is also no end in sight as to Mr. Foy's case.  On April 9th, the government promised to deliver *all* discovery to counsel in 7 to 10 days.  While counsel has received many pages of discovery, almost all of the discovery delivered relates to investigating Mr. Foy's identity.  In a case that will likely turn on video footage, only footage from two officers' body-worn cameras has been provided.  There were between one and two dozen officers on the scene for this incident. The government has provided five other videos from the internet—four appear to be videos either previously provided by or previously used as exhibits by the defense.  While the defense appreciates the preliminary discovery that was provided, the most essential evidence is still missing. The government made clear assurances that they were prepared to provide *all* discovery for Mr. Foy.  The government has thus far provided a small fraction.  Once the government turns over *all* discovery, the defense will still likely need substantial time to prepare for trial.  The failure to deliver timely discovery information puts Mr. Foy's detention squarely within the limitation on pretrial detention that this Court previously recognized: at one-hundred days into Mr. Foy's preventative detention, Mr. Foy's attorneys still cannot to begin to meaningfully prepare for trial.

Meanwhile, the government cannot continue to justify Mr. Foy's continued detention. Because Mr. Foy has no prior criminal record, the government relies tenuously and exclusively on the allegation that he used a "dangerous weapon," namely, a hockey stick.  *See* ECF 6. However, Mr. Foy's intent was never to use the hockey stick as a weapon.  Indeed, when Mr. Foy set out to

attend the protest, he deliberately left his lawfully owed firearm at home, precisely because he *did not* intend to stir up trouble or cause violence.   Mr. Foy's use of the hockey stick cannot be the basis for detaining when there is no fact that the government can point to that suggests his intent to use it in an assault.  In fact, the US Sentencing Guidelines define a dangerous weapon as "an instrument capable of inflicting death or serious bodily injury; or, an object that is not an instrument capable of inflicting death or serious bodily injury but that (i) closely resembles such an instrument; or (ii) the defendant used the object in a manner that created the impression that the object was such an instrument (e.g., a defendant wrapped a hand in a towel during a bank robbery to create the appearance of a gun)." U.S. Sentencing Guidelines, §1B1.1, application instructions. Three high-profile cases in which defendants were recently released underscore this point.  The following defendants were released despite allegedly engaging in conduct far more culpable and violent than Mr. Foy:

- *United States v. Richard Barnett*, 1:21CR38-CRC, Barnett (now famously) entered the Capitol building armed with a stun gun, brazenly sat at Speaker Pelosi's desk and posed for photos.  He is also alleged to have stolen an envelope from the Speaker's office. *See* Doc. No. 3 (Amended Complaint and Statement of Facts).  Barnett is charged with, *inter alia*, knowingly entering and remaining in any restricted building without lawful authority while armed with a dangerous weapon, in violation of 18 U.S.C. §1752.   On April 27, 2021, Judge Cooper granted his motion for reconsideration of bail and ordered him released into the High Intensity Supervision Program.  *See* Doc. No. 29.

- *United States v. Robert Sanford,* 1:21CR52-ZMF, Sanford is alleged to have hurled a fire extinguisher into a crowd of police officers and striking at least three officers in the head. Video footage allegedly captures Sanford screaming "traitors" and "cowards"

at the officers.  *See* Doc. No. 10 (Government's Opposition to Defendant's Motion to Reconsider Detention).  Like Mr. Foy, Sanford is charged with, *inter alia*, assaulting police officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).  Yet on March 2, 2021, Judge Friedman granted Sanford's motion for release and placed him on GPS monitoring.  Doc. No. 11.

-   *United States v. David Alan Blair,* 1:21CR86-CRC, Blair was captured on body worn camera brandishing a lacrosse stick which served as a pole for a large confederate flag. *See* Doc. No. 1 (Complaint and Statement of Facts).  While walking back and forth between the crowd and police officers, Blair is alleged to have exhorted, "hell naw, quit backing up, don't be scared. . .".  As an officer advanced, Blair yelled at the officer: "what's up motherfucker, what's up, what's up bitch." *Id*.  He then struck the officer in the chest with the lacrosse stick and had to be forcibly restrained by multiple officers *Id*.  Notwithstanding this *direct* physical assault with a lacrosse stick, Blair was ordered released with conditions.  Doc. 6.  Like Mr. Foy, Blair is charged with, *inter alia*, assaulting police officers using a dangerous weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b).

## Argument

Consistent with the presumption of innocence and the Eighth Amendment prohibition against excessive bail, the Bail Reform Act of 1984 provides that a defendant should be released pending trial on personal recognizance or "subject to the least restrictive further conditions, or combination of conditions that . . . will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. §§ 3142(b), (c)(1)(B). The Supreme Court has explained: "In our society liberty is the norm, and detention

prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987); see also *United States v. Singleton*, 182 F.3d 7, 9 (D.C. Cir. 1999) ("Detention until trial is relatively difficult to impose."). As a general rule, courts should refuse to release defendants on bail "[o]nly in rare circumstances," and "only for the strongest of reasons." *United States v. Motamedi*, 767 F.2d 1403, 1405, 1406 (9th Cir. 1985) (Kennedy, J.). Any "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Id.* at 1405.

More specifically, as it relates to the January 6th cases, the D.C. Circuit recently held that: "[t]o order a defendant preventatively detained, a court must identify an articulable threat posed by the defendant to an individual or the community. The threat need not be of physical violence, and may extend to "non-physical harms such as corrupting a union. But it must be clearly identified." *Munchel v. United States¸* 991 F.3d 1273, 1283 (D.C. Cir. 2021) (citation and internal quotations omitted).[3]

Here, given Mr. Foy's complete lack of criminal record, demonstrated respect for the law as a military veteran, and the lack of evidence that any aspect of his involvement in this case was premediated or coordinated, the government has failed to articulate the specific kind of threat that Mr. Foy poses. There is no evidence that he is a risk to police officers in general; in fact, even on

---

[3] In *Munchel*, the Circuit did not find that the government had sufficient evidence of dangerousness where the defendants went to the January 6th rally with tactical vests, a stun gun and at least a pocketknife. *Munchel*, 991 F.3d at 1276. They met with members of the Oath Keepers militia and bragged about "enter[ing] the building with armor and f_ing weapons." *Id*. Once inside, they gathered zip ties and went to the Senate gallery. *Id.* When agents searched their home, they found firearms and a "large quantity of loaded magazines." *Id.* at 1277. By contrast, the government does not allege that Mr. Foy brought equipment such as a tactical vest, or a weapon such as a stun gun or a knife. The search warrant of his house did not reveal a cache of loaded magazines. Mr. Foy did not meet with any militia members. And like the defendants in *Munchel*, he had no physical interactions and did not vandalize any property when inside the Capitol.

January 6th, Mr. Foy encountered dozens of police officers with whom he had no conflict.  There is no articulable threat that he is violent—all evidence in the record, including his past and his character references—demonstrate that he is known to be a peaceful person.  Moreover, the three cases described above, in which the defendants are alleged to have engaged in far more brazen and violent conduct but were nonetheless released, show Mr. Foy's continued detention would create an unwarranted horizontal disparity.

Furthermore, and most importantly, as recently held by the D.C. Circuit, this Court must consider the specific circumstances that made the defendant's dangerous conduct possible.  *Id.* ("The District Court also failed to demonstrate that it considered the specific circumstances that made it possible, on January 6, for Munchel and Eisenhart to threaten the peaceful transfer of power. The appellants had a unique opportunity to obstruct democracy on January 6….").  Thus, if this Court follows the directive to "consider [the threat] in context," "it follows that whether a defendant poses a particular threat depends on the threat identified and the resources and capabilities of the defendant." Mr. Foy does not pose a particular danger because he will have little opportunity, capability or resources to be a threat to democracy or to the Capitol Police. His limited participation was fully bounded by the scope of the January 6th events.

Taken as a whole, the Government has not shown "by clear and convincing evidence that [Mr. Foy] presents an identified and articulable threat to an individual or the community [so that] a court may disable the arrestee from executing that threat." *Id.* at 1282 (quoting *Salerno*, 481 U.S. at 751).  The record does not support a finding, by clear and convincing evidence, that Mr. Foy presents an articulable threat.  To the extent that there is any evidence that Mr. Foy is a threat (and counsel maintains that there is not), the Court can fashion a combination of conditions that would reasonably assure the Court that he is not.

Mr. Foy has repeated asserted his right to a speedy trial in this case.  He has requested meaningful discovery in a timely manner.  To this point, there has been only incremental progress towards resolution.  In the interim, he is suffering through unusually harsh conditions because of the necessary response to the pandemic and because of his documented mental illness.  Given the confluence of these factors, Mr. Foy should be released into the custody of his mother who has already been qualified as a third-party custodian.

## <u>Conclusion</u>

Wherefore, for the foregoing reasons, Mr. Foy respectfully requests that the Court release him.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

/s/

_____
EUGENE OHM
Assistant Federal Public Defender
625 Indiana Avenue, N.W., Suite 550
Washington, D.C.  20004
(202) 208-7500