UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | Case No. 21-CR-108 (TSC) |
| : | |
| v. : | |
| : | |
| MICHAEL JOSEPH FOY, : | |
| : | |
| Defendant. : | |

UNITED STATES' MOTION TO CONTINUE AND
TO EXCLUDE TIME UNDER THE SPEEDY TRIAL ACT

The United States of America hereby moves this Court for a 60-day continuance of the above-captioned proceeding, and further to exclude the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv). In support of its motion, the government states as follows:

FACTUAL BACKGROUND

For his conduct on January 6, 2021, defendant Foy is now charged by Indictment with: (1) ) Civil Disorder, in violation of 18 U.S.C. § 231(a)(3); (2) Obstruction of an Official Proceeding, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (3) Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon, in violation of 18 U.S.C. §§ 111(a)(1) and (b); (4) Knowingly Entering or Remaining in any Restricted Building or Grounds With a Deadly Weapon in violation of 18 U.S.C. § 1752(a)(1)(2) and (4), and; (5) Act of Physical Violence on the Capitol Grounds, in violation of 40 U.S.C. §§ 5104(e)(2)(F). This Court had previously denied the defendant's emergency bond review motion, and defendant Foy is detained pending trial in this

matter. *See*, Court's Minute Order March 15, 2021.

In brief, on January 6, as a Joint Session of the United States House of Representatives and the United States Senate convened to certify the vote of the Electoral College of the 2020 U.S. Presidential Election, members of a large crowd that had gathered outside forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. Scores of individuals entered the U.S. Capitol without authority to be there. As a result, the Joint Session and the entire official proceeding of the Congress was halted until the Capitol Police, the Metropolitan Police Department, and other law enforcement agencies from the city and surrounding region were able to clear the Capitol of hundreds of unlawful occupants and ensure the safety of elected officials. This event in its entirety is hereinafter referred to as the "Capitol Attack."

Based on the evidence and the defendant's violent actions and attacks on law enforcement officers protecting the U.S. Capitol, defendant Foy willfully and deliberately brought a hockey stick - a deadly weapon, with him and used that weapon to repeatedly strike law enforcement officers in the face, head, neck, and body area. Additionally, based on a review on the relevant photos and videos of defendant Foy, he is seen encouraging other rioters to assault to officers as well to join him when he crawled through a destroyed window and into the Capitol of the United States, weapon in hand.[1]

The investigation and prosecution of the Capitol Attack will likely be one of the largest in American history, both in terms of the number of defendants prosecuted and the nature and volume

---

[1] When defendant Foy was arrested at his home on January 21, 2021, officers found the hockey stick defendant Foy used and the hat he wore during the riot at the U.S. Capitol in his residence in Michigan.

of the evidence. Over 300 individuals have been charged in connection with the Capitol Attack. The investigation continues and the government expects that at least one hundred additional individuals will be charged. While most of the cases have been brought against individual defendants, the government is also investigating conspiratorial activity that occurred prior to and on January 6, 2021. The spectrum of crimes charged and under investigation in connection with the Capitol Attack includes (but is not limited to) trespass, engaging in disruptive or violent conduct in the Capitol or on Capitol grounds, destruction of government property, theft of government property, assaults on federal and local police officers, firearms offenses, civil disorder, obstruction of an official proceeding, possession and use of destructive devices, and conspiracy.

   Defendants charged and under investigation come from throughout the United States, and a combined total of over 900 search warrants have been executed in almost all fifty states and the District of Columbia. Multiple law enforcement agencies were involved in the response to the Capitol Attack, which included officers and agents from U.S. Capitol Police, the District of Columbia Metropolitan Police Department, the Federal Bureau of Investigation, the Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms and Explosives, the United States Secret Service, the United States Park Police, the Virginia State Police, the Arlington County Police Department, the Prince William County Police Department, the Maryland State Police, the Montgomery County Police Department, the Prince George's County Police Department, and the New Jersey State Police. Documents and evidence accumulated in the Capitol Attack investigation thus far include: (a) more than 15,000 hours of surveillance and body-worn camera footage from multiple law enforcement agencies; (b) approximately 1,600 electronic devices; (c) the results of hundreds of searches of electronic communication providers; (d) over

210,000 tips, of which a substantial portion include video, photo and social media; and (e) over 80,000 reports and 93,000 attachments related to law enforcement interviews of suspects and witnesses and other investigative steps. Moreover, as the Capitol Attack investigation is still on-going, the number of defendants charged, and the volume of potentially discoverable materials will only continue to grow.

The government is aware of and takes seriously its obligations pursuant to Federal Rule of Criminal Procedure 16 and Local Criminal Rule 5.1(a), the provisions of *Brady v. Maryland*, 373 U.S. 83, 87 (1963), *Giglio v. United States*, 405 U.S. 150, 153-54 (1972), and the Jencks Act, 18 U.S.C. § 3500. Accordingly, the government, in consultation with the Federal Public Defender, is developing a comprehensive plan for handling, tracking, processing, reviewing, and producing discovery across the Capitol Attack cases. Under the plan, the discovery most directly and immediately related to pending charges in cases involving detained defendants will be provided within the next 30 to 60 days. Cases that do not involve detained defendants will follow thereafter. The government has already provided a significant amount of discovery to defendant Foy, as outlined in the several the Government's Notice of Filing for Discovery in the past weeks. *See*, ECF# 15, 17, and ECF# 20 – to Tour the U.S. Capitol.[2]

The government's discovery productions will also be supplemented on an on-going basis. In the longer term, the plan will include a system for storing, organizing, searching, producing and/or making available voluminous materials such as those described above in a manner that is

---

[2] On April 8, 2021, this Court previously approved the Government's Protective Order Governing Discovery - to expedite the flow of discovery material between the parties and adequately protect the United States' legitimate interests pursuant to the Court's authority under Fed. R. Crim. P. 16(d)(1) and with the consent of the parties.

4

workable for both the government and hundreds of defendants. This latter portion of the plan will require more time to develop and implement, including further consultation with the Federal Public Defender.

As outlined *supra*, the government has already provided defense counsel with significant preliminary (i.e., not Bates-stamped) discovery, including numerous files, photos, videos, and case paperwork noted in the government's recent Notice of Filings, and anticipates providing additional preliminary discovery soon.

## ARGUMENT

Under the Speedy Trial Act, in any case in which a plea of not guilty is entered, a defendant charged in an information or indictment with the commission of an offense must commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs. 18 U.S.C. § 3161(c)(1). The Speedy Trial Act allows this Court to grant a continuance and to exclude that time from the Speedy Trial calculation upon a finding "that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). Among the factors the Court must consider in determining whether to grant such a continuance are whether the failure to grant a continuance would result in a miscarriage of justice, whether the case is so unusual or complex that it is unreasonable to expect the parties to be able to prepare for trial within the Act's standard time limits, and whether a continuance is necessary to give the attorneys for both the defendant and the government the time necessary for effective preparation. § 3161(h)(7)(B)(i), (ii), (iv). Importantly, "[i]n setting forth the statutory factors that justify a continuance under subsection

(h)(7), Congress twice recognized the importance of adequate pretrial preparation time." *Bloate v. United States*, 559 U.S. 196, 197 (2010) (*citing* §3161(h)(7)(B)(ii), (B)(iv)).

An ends-of-justice finding is within the discretion of the Court. *See, e.g., United States v. Rojas-Contreras*, 474 U.S. 231, 236 (1985); *United States v. Hernandez*, 862 F.2d 17, 24 n.3 (2d Cir. 1988). "The substantive balancing underlying the decision to grant such a continuance is entrusted to the district court's sound discretion." *United States v. Rice*, 746 F.3d 1074 (D.C. Cir. 2014).

In this case, an ends-of-justice continuance is warranted under 18 U.S.C. § 3161(h)(7)(A) based on the factors described in 18 U.S.C. § 3161(h)(7)(B)(i)(ii) and (iv). As described above, the Capitol Attack is likely the most complex investigation ever prosecuted by the Department of Justice. Developing a system for storing and searching, producing and/or making available voluminous materials accumulated across hundreds of investigations, and ensuring that such system will be workable for both the government and defense, will take time. Even after a system generally agreeable to the government and the Federal Public Defender is designed and implemented, likely through the use of outside vendors, it will take time to load, process, search and review discovery materials. Further adding to production and review times, certain sensitive materials may require redaction or restrictions on dissemination, and other materials may need to be filtered for potentially privileged information before they can be reviewed by the prosecution.

The need for reasonable time to organize, produce, and review voluminous discovery is among multiple pretrial preparation grounds that Courts of Appeals have routinely held sufficient to grant continuances and exclude the time under the Speedy Trial Act. *See, e.g., United States v. Bikundi*, 926 F.3d 761, 777-78 (D.C. Cir. 2019) (Upholding ends-of-justice continuances totaling

18 months in two co-defendant health care fraud and money laundering conspiracy case, in part because the District Court found a need to "permit defense counsel and the government time to both produce discovery and review discovery"); *United States v. Bell*, 925 F.3d 362, 374 (7th Cir. 2019)(Upholding two-month ends-of-justice continuance in firearm possession case, over defendant's objection, where five days before trial a superseding indictment with four new counts was returned, "1,000 pages of new discovery materials and eight hours of recordings" were provided, and the government stated that "it needed more than five days to prepare to try [the defendant] on the new counts"); *United States v. Vernon*, 593 F. App'x 883, 886 (11th Cir. 2014) (District court did not abuse its broad discretion in case involving conspiracy to commit wire and mail fraud by granting two ends-of-justice continuances due to voluminous discovery); *United States v. Gordon*, 710 F.3d 1124, 1157-58 (10th Cir. 2013)(Upholding ends-of-justice continuance of ten months and twenty-four days in case involving violation of federal securities laws, where discovery included "documents detailing the hundreds financial transactions that formed the basis for the charges" and "hundreds and thousands of documents that needs to be catalogued and separated, so that the parties could identify the relevant ones")(internal quotation marks omitted); *United States v. Lewis*, 611 F.3d 1172, 1177-78 (9th Cir. 2010)(Upholding ninety-day ends-of-justice continuance in case involving international conspiracy to smuggle protected wildlife into the United States, where defendant's case was joined with several co-defendants, and there were on-going investigations, voluminous discovery, a large number of counts, and potential witnesses from other countries); *United States v. O'Connor*, 656 F.3d 630, 640 (7th Cir. 2011)(Upholding ends-of-justice continuances totaling five months and twenty days in wire fraud case that began with eight charged defendants and ended with a single defendant exercising the right to trial, based

on "the complexity of the case, the magnitude of the discovery, and the attorneys' schedules").

Here, a vast amount of the evidence gathered by the government is not defendant- or case-specific, and is inexplicably intertwined between and among defendants and cases. To give just one example: hundreds of people unlawfully entered the U.S. Capitol on January 6, 2021. Many of those people, like this defendant, had or held out their cell phones, apparently filming and photographing the events as they transpired. A large number of those individuals have been apprehended and their cellular telephones seized and searched. Some subset of those phones likely were carried by people near the defendant charged in this case and may have captured information that could be of value to the government or the defense, such as an expression relating to intent. But merely identifying which phones may contain important evidence related to these specific defendants will be a hugely time-consuming task. And once that evidence is identified, the government cannot simply turn over the entire contents of someone's cell phone without first reviewing the contents to ensure that it is not producing someone's private information to a complete stranger. *Cf. Riley v. California*, 573 U.S. 373, 396-97 (2014) ("A phone not only contains in digital form many sensitive records previously found in the home; it also contains a broad array of private information never found in a home in any form[.]"). This is just one example of the possible interconnectedness of the discovery materials across the Capitol Attack cases, but it captures why the government is approaching the discovery in these matters holistically. It also demonstrates why this Court should consider all of the evidence gathered by the government thus far when determining a time frame for trial that would best balance the interests of the public and the defendant in a speedy trial with the time needed for the defendant to effectively prepare his defense.

In sum, due to the number of individuals currently charged across the Capitol Attack investigation and the nature of those charges, the on-going investigation of many other individuals, the volume and nature of potentially discoverable materials, and the reasonable time necessary for effective preparation by all parties taking into account the exercise of due diligence, the failure to grant such a continuance in this proceeding would be likely to make a continuation of this proceeding impossible, or result in a miscarriage of justice. Accordingly, the ends of justice served by granting a request for a continuance outweigh the best interest of the public and the defendant in a speedy trial.

Government counsel notified the defense of the filing of this motion. Defense counsel responded that he planned to oppose the motion. The amount of evidence generated at the scene of the crime is vast and interconnected, and the government continues to uncover more and more of it. Completing discovery in this case is not a simple matter of producing just those items the government obtained directly through its investigation of this defendant. Simply stated, defendant Foy did not operate in isolation, and the evidence relating to him does not exist in isolation either.

WHEREFORE, the government respectfully requests that this Court grant the motion for a 60-day continuance of the above-captioned proceeding, and that the Court exclude the time within which the trial must commence under the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.*, on the basis that the ends of justice served by taking such actions outweigh the best interest of the public and the defendant in a speedy trial pursuant to the factors described in 18 U.S.C. § 3161(h)(7)(A), (B)(i), (ii), and (iv).

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793

By: */s/ Emory V. Cole*
EMORY V. COLE
Assistant United States Attorney
PA. Bar Number 49136
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7692
Emory.Cole@usdoj.gov