**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No. 21-CR-108 (TSC)** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL JOSEPH FOY,** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S SECOND MOTION FOR RELEASE TO HOME CONFINEMENT PENDING THE OUTCOME OF HIS CASE**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in opposition to defendant's second motion for release to home confinement pending the outcome of his case. The United States opposes release because, *inter alia*, in view of the factors outlined in 18 U.S.C. § 3142(g), there are no conditions or combinations of conditions that can effectively ensure the safety of any other person and the community, pursuant to 18 U.S.C. § 3142(e). The government respectfully requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the past detention hearings, be considered in the Court's determination regarding pre-trial detention. Simply stated, the defendant has stated nothing new that would require this Court to overturn its prior detention Order and release this defendant.

For all the reasons stated herein and because the defendant has not cited any new evidence since this Court previously denied the defendant's release motion, the government again requests that this Court find that based on clear and convincing evidence, Foy's pretrial detention is

1

warranted because he poses a clear and present danger and threat to the safety of the community that cannot be mitigated by any combination of release conditions.

## **Factual Background**

### **Defendant Poses an Ongoing Threat to the Community**

For the sake of brevity, the United States will not fully restate the evidence outlined in its prior pleadings. A few points and photos below bear emphasis, however. In the last government's filing (ECF# 11) in opposing the release of the defendant, the government outlined in particular details the defendant's violent actions against law enforcement officers who were protecting the U.S. Capitol, elected representatives, their staffs, the Vice-President of the United States, their families, and our Democracy on January 6, 2021. (*See* Government's Opposition ECF# 11). Because of that extensive outline of the facts in the government's initial opposition, the government will not repeat those facts in total but incorporate them herein.

#### **Foy's Violent Conduct and Assaults on Officers on January 6, 2021**

> . . . defendant Foy came to Washington D.C. to participate in the violent insurrection against the government of the United States, despite his oath he took as a former Marine to support and defend the Constitution of the United States. Based on the evidence and the defendant's violent actions and attacks on law enforcement officers protecting the U.S. Capitol, defendant Foy willfully and deliberately brought a hockey stick - a deadly weapon, with him and used that weapon to repeatedly strike law enforcement officers in the face, head, neck, and body area. Additionally, based on a review on the relevant photos and videos of defendant Foy, he is seen encouraging other rioters to assault to officers as well to join him when he crawled through a destroyed window and into the Capitol of the United States, weapon in hand.[1]
>
> . . .

---

[1] When defendant Foy was arrested at his home on January 21, 2021, officers found the hockey stick defendant Foy used and the hat he wore during the riot at the U.S. Capitol in his residence in Michigan.

2

More broadly, defendant Foy violently attacked officers while attempting to break through the center doorway on the Lower West Terrace to gain entrance to the U.S. Capitol Building. He used physical violence against officers who were protecting the entrance, and his individual participation in the larger mob heightened the overall violence and dangerousness of the day.

Indeed, defendant Foy brought his weapon –a hockey stick- to use to the U.S. Capitol. Images and video taken at the U.S. Capitol show the mob attacking officers guarding the doors. Defendant Foy and others hurl projectiles at the officers and physically assaulted them, often using weapons like poles, bottles, and in defendant Foy's case, a hockey stick. . . . In the photos or screen shots of available videos below the Court can see the defendant's actions and the brutal attacks on law enforcement officers he inflicted:

*See* Government's Opposition ECF# 11

**The below three photos shows defendant Foy throwing a sharpened pole and striking Police Officers**









**Above photo from BWC video of defendant Foy winds up and swings over and at downed officers**

**Below photos of defendant Foy rallying others and attacking officers with his hockey stick at U.S. Capitol**









# **ARGUMENT**

The defendant's current motion ostensibly argues, *inter alia*, that because he has not received substantial discovery, he should be released by the Court. As the Court is now aware from recent notices of filing by the government, the defendant now has received a substantial amount of body-worn camera videos, other videos, law enforcement paperwork for this case, surveillance video, downloaded copies of all items from his cellphone, and many other items to prepare for trial in this matter. (*See* Government's Notices of Filing ECF# 15, 17, and 28). In addition, in the coming weeks, the government will also provide counsel for the defendant with materials which may include, but are not limited to, statements of similarly situated defendants, forensic searches of electronic devices and social media accounts of similarly situated defendants, and citizen tips. The government is working to develop a system that will facilitate access to these materials.

Moreover, the defendant argues that the defendant's "intent was never to use the hockey stick as a weapon," *See* Defendant's Second Motion ECF# 22 at 3. The government avers that this argument stretches credulity and is an insult to the brave and heroic law enforcement officers – men and women – who were brutally attacked and assaulted by this defendant. In fact, based on the evidence, the defendant's main goal was to tear down a system of constitutional Democracy and anyone who got in his way. Indeed, the defendant's hockey stick represented something much more than a stick — it was an instrument of brutality and viciousness which could have caused death or serious bodily injury to anyone in the path of the defendant's violent swings and blows to the officers. *See* above photos and previous submitted motion video clips marked Government Exhibits 1-5.

8

Counsel for the defendant next argument that defendants in other cases - *United States v. Richard Barnett*, 1:21CR38-CRC, *United States v. Robert Sanford,* 1:21CR[86]-[PLF]*, and United States v. David Alan Blair,* 1:21CR86-CRC - were released by other judges in this courthouse is misleading, at best or flat-out wrong, in his suggestion that those defendants were "released despite allegedly engaging in conduct far more culpable and violent than Mr. Foy." *See* Defendant's Second Motion ECF# 22 at 4-5. Fundamentally, none of the above cases that the defendant cites are of the violent, aggressive, or of a persistent nature to harm law enforcement officers on January 6, 2021, compared to what this defendant did on that day. In *Barnett*, that defendant entered theCapitol building armed with a stun gun, sat at Speaker Nancy Pelosi's desk, and posedfor photos; in *Sanford*, that defendant was alleged to have hurled a fire extinguisher into a crowd of police officers*, and in *Blair*, that defendant brandished a lacrosse stick which served as a pole for a large confederate flag. Simply put, none of the cases cited by the defendant comes anywhere near the violent, persistent, and continued assaults on law enforcements officers that this defendant committed.

Similar cases to this defendant's actions in this case, the government will highlight just a few cases where defendants physically and violently assaulted law enforcement officers on January 6, 2021, and those defendants – like defendant Foy – are held pending trial. In *United States v. Mark Kenny Ponder*, 21 CR 259-TSC, the defendant has been held without bond because he struck an officer while wielding long thin pole and struck a second and third officer with a thicker patriotic red-white-blue pole. In *United States v. Thomas Sibick*, 21 CR 291-ABJ, the defendant has been held without bond because he joined in the assault on a police officer and stole that officer's badge and police radio. In *United States v. Daniel Rodriguez*, 21 CR 246-ABJ,

9

the defendant has been detained prior to trial because he tased a police officer. In *United States v. Kyle Fitzsimons*, 21 CR 158 (KBJ), the defendant has been held without bond because he pulled officers by the body parts in attempt to pull them into the crowd. The defendant in *Fitzsimons* also pulled the gas mask off another officer, which was then followed by another individual spraying that officer in the face. In *United States v. Joseph Lino Padilla*, 21 CR 214-JDB, the defendant has been held without bond because he, along with other rioters, used a large sign with a metal frame as a battering ram to push back law enforcement, led other rioters to push, headbutted law enforcement, threw large metal barricades onto officers to forcibly push them back, and hurled a flagpole at officers who were being attacked by rioters. In *United States v. Jonathan Gennaro Mellis*, 21 CR 206-EGS, the defendant has been held without bond because he repeatedly struck and made stabbing movements towards the officers with a weapon/stick.

Importantly, defendant Foy's conduct did not stop at his own individual decision to engage in physical violence. It extended to his active encouragement of other rioters to continue to try to break through the police line and into the building. Defendant Foy's willing and repeated participation in violence against police officers protecting a lawful proceeding of Congress, for which he is charged with multiple felonies – including crime of violence – weighs heavily in favor of continued detention. Not only was his individual conduct and encouragement to others violent and dangerous, but his actions heightened the overall violence and dangerousness of the day. As stated by Chief Judge Beryl A. Howell, "[t]he actions of this violent mob, particularly those members who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law." *See United States v. Chestman*, 21-mj-218 (BAH), ECF No. 23, at *13, 16 (D.D.C. Feb. 26, 2021) ("Grave concerns are implicated if a

defendant actively threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification"). Here, the defendant violently attacked law enforcement officers who, with their heroic efforts, were protecting the U.S. Capitol and all who were inside.

Nothing that defendant now argues again rebuts the presumption for detention of this defendant for this crime of violence, there is a presumption which remains in the Bail Reform Act that the defendant should be detained pending trial as a danger to the community. 18 U.S.C. 3142(e). Again, for detention of this defendant, this Court considered the four factors under § 3142(g) that should be addressed and weighed in determining whether to detain a defendant pending trial: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his or her history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his or her release. As outlined below and after due consideration of all the factors listed above, this Court held that the defendant should not be released at the last release motion hearing, and this Court stated its finding in particular, specific details, and relevant factors the Court considered in detaining this defendant as outlined below:

> . . .
> Mr. Foy is a veteran of the United States Marine Corps. He served from 2015 till 2020, when he was honorably discharged. He served overseas in Okinawa from 2015 to 2017, and on-base in North Carolina till last year. He had been diagnosed with an unspecified anxiety disorder and major depressive disorder and posttraumatic stress disorder, and I understand he has undergone some hardships since his discharge.
>
> I take service to the military seriously and factor it heavily in determining not just detention but sentencing. You know, I give a lot of credit to people who serve their country. But as Mr. Cole points out, Mr. Foy took an oath

11

to protect and defend the Constitution.

And not only is he charged with undertaking acts to undermine the Constitution and overthrow the lawfully elected government and invalidate lawfully elected election results, he took those acts despite his oath as a military officer to protect and defend the Constitution.

. . .

But I take Mr. Cole's point that his presence at a protest rally against the lawful -- widely accepted as the lawful election results in this country indicate that this wasn't some spur-of-the-moment action he took to be here on January 6. So I take Mr. Cole's point in that regard. But if I decide to hold Mr. Foy without bond, I'm not holding him because he went to a previous rally, which is his legal right. I'm holding him because his presence undermines any inference that this was an impulsive, spur-of-the-moment act.

. . .

Mr. Ohm suggests and argues that Mr. Foy's actions here were legal because he was coming to the defense of someone else or of other individuals, which certainly indicates an argument that Mr. Foy was acting rationally and reasonably. Again, that's for the jury to decide. But there is no evidence that Mr. Foy's mental illness played any role in causing him to take the actions that he did, and I don't see any basis to find that.

Finally, with regard to the nature and circumstances of the offense charged, I don't think it possible to overstate the seriousness and the enormity of what was a mass, violent riot at our Capitol on January 6.

The police, by all accounts, and even in the evidence provided by both sides, were vastly outnumbered. The video footage of the police mustering in the tunnels below the Capitol and getting ready to go out and confront what must have been a terrifying, violent mob was just really, really awful.

And it is to the credit of our law enforcement officers that, knowing what they were facing, knowing the fact that they were outnumbered, and knowing that the crowds were basically screaming for blood, that they went out there. And I do not like to imagine what could have happened if this riot had not been stopped.

If somehow law enforcement had not been able to diffuse the situation and get the protesters -- and I don't call these "protesters" -- rioters who were screaming to hang the vice president and roaming the Capitol in search of the Speaker of the House, what would have happened if they had not been dispersed. I don't like to imagine it.

12

It could have been really very, very bloody and very violent, and there could have been enormous losses of life, to say nothing of the threat to our rule of law and our electoral system and our democracy. I'm not generally given to hyperbole about crimes, but this one was horrifying.

. . .

There is a great deal of video evidence from multiple sources. There is also evidence in the form of a photograph found on Mr. Foy's phone which was recovered. The photograph shows rioters and debris standing inside the Capitol. I have reviewed the evidence submitted in this case.

Mr. Ohm, I have to tell you that, having reviewed the video material that you submitted, I cannot agree with your interpretation of events. I watched all of the material. It is true that at some point Mr. Foy or someone else is yelling, she's being crushed, or there's a woman down, she's dead, she's hurt. But I watched the actions, not just listened to the words.

Mr. Foy is seen on the videotape actively, violently, and repeatedly swinging his hockey stick at officers, Metropolitan Police Department officers and other law enforcement officers, before any woman went down. And after the woman is apparently rescued, Mr. Foy turns on the law enforcement officers, screaming and cursing at them, and turns his rage on the officers.

This does not appear to me to be a simple case of Mr. Foy being on the scene and trying to be a Good Samaritan, helping out a woman who had fallen. This appears to this viewer of the videotape to be an individual who's taking part in violence against the police, attempts to try and draw officers' attention to the fact that there's a woman down, and then continues in his violent assault and rage against the officers after the situation with the woman seems to have been resolved.

So this is not a simple situation of I just happened to be there and I'm trying to hold off the officers with my hockey stick while she can get help. That is not how this Court viewed that evidence. The evidence that I viewed is violent and horrifying.

Moreover, Mr. Foy wasn't there by accident. He didn't wander onto the Capitol grounds mistakenly. He got in his car and he drove from Michigan to the District of Columbia with an intention to participate in this insurrection. He could have stopped at any point. He could have walked away when he got to the Capitol grounds. He could have walked away on the steps. He could have walked away on the West Terrace.

13

When the crowds stormed Congress and broke into the Capitol, and Vice President Pence was inside the building and people were shouting about what they wanted to do to him, Mr. Foy could have left. After the woman was rescued or assistance was rendered, Mr. Foy could have left. He did not.

He proceeded into the Capitol where windows had been smashed, where a woman had been shot trying to get into the building, where disorder reigned and where congress people were cowering in terror. And he went into the Capitol, he took a photograph of the destruction he and his fellow rioters had wrought, and then he went home. He did not turn himself in immediately after. He was arrested by the police sometime later.

I find that Mr. Foy has failed to overcome the presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community. I do so not just because of the very violent nature of the act that he is charged with, but the fact that he committed this act after getting in his car and driving for hours and hours to the District of Columbia, the fact that after engaging in violent, basically hand-to-weapon combat with D.C. law enforcement officers, he continued on into the Capitol and took photographs of the destruction that he and his co-rioters had wrought.

I find that the government has established by clear and convincing evidence that Mr. Foy is a danger to the community. Therefore, Mr. Foy's motion for pretrial release is denied, and Mr. Foy shall remain in custody pending trial without bail. . . .

*See* Bond Release Motion Transcript (Court's Finding) March 15, 2021 at 25 – 33.

In consideration of these 3142(g) factors, again the government respectfully avers that this Court make the same finding as the Court outlined above—that there remains no conditions or combination of conditions which can effectively ensure the safety of any other person and the community.

Finally, the defendant cites a recent U.S. Court of Appeals for the D.C. Circuit decision, *Munchel v. United States*, 991 F.3d 1273 (D.C. Cir. 2021), in support of the defendant release

14

motion. The defendant argues that "given Mr. Foy's complete lack of criminal record, demonstrated respect for the law as a military veteran, and the lack of evidence that any aspect of his involvement in this case was premediated or coordinated, the government has failed to articulate the specific kind of threat that Mr. Foy poses." *See* Defendant's Second Motion ECF# 22 at 6. As noted above, this Court has powerfully addressed this issue in the Court prior finding denying the defendant's release, *see supra*. In that regard, this case presents a very different set of circumstances than were present in *Munchel*, and its reasoning and analysis supports a finding of detention here. In *Munchel*, the Circuit Court observed that the defendants did not engage in any violence and were not involved in planning or coordinating. 991 F.3d at 1284. In contrast, this defendant violently assaulted several law enforcement officers on numerous occasions with a sharpen pole and hockey stick. The facts and principles outlined in *Munchel* clearly supports continued detention of this defendant because he is a danger to the community if released and that danger has been shown, and this Court had found so based on facts and evidence in this case. Indeed, the defendant's danger is the result of his willingness to strike a uniformed police officer in the head and torso area with a pole and hockey stick that he used as a weapon. Such danger is a function of the defendant's individual characteristics, not the larger group.

**CONCLUSION**

Consideration of the factors enumerated in 18 U.S.C. § 3142(g) and the Court's past finding demonstrate that defendant Foy is still a danger to the community. Accordingly, the United States requests that the defendant be detained without bond pending trial. Therefore, this Court should again deny the defendant's release motion and to continue to detain defendant Foy pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar No. 415793


By: */s/ Emory V. Cole*
EMORY V. COLE
Assistant United States Attorney
PA. Bar Number 49136
555 Fourth Street, N.W.
Washington, D.C. 20530
(202) 252-7692
Emory.Cole@usdoj.gov

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 14, 2021, I caused a copy of the foregoing to be served on counsel of record via electronic filing.

_/s/ Emory V. Cole_____
Emory V. Cole
Assistant United States Attorney