**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**UNITED STATES OF AMERICA :**

     **v.**                **:**     **1:21-CR-108 (TSC)**

**MICHAEL FOY**        **:**

**DEFENDANT'S REPLY TO THE GOVERNMENT'S RESPONSE TO HIS SECOND
BOND REVIEW MOTION**

Michael Foy ("Mr. Foy") respectfully submits this reply to the government's response to his second motion for bond. Mr. Foy has been preventatively detained for well over 100 days since his arrest on January 24, 2021. He has no prior record, no history of violence, and strong ties to his community. The government's responses to Mr. Foy's motions for bond are unavailing for the following reasons: 1) despite having well exceeded the Speedy Trial Act's requirement that Mr. Foy be tried within 70 days of the date before he appeared before this Court on March 10, 2021[1], Mr. Foy remains detained with no trial date in sight and by its own admission, the government has not provided full discovery; 2) there is no rebuttable presumption for detention in this case[2]; and 3) a balancing of the factors under 18 U.S.C. § 3142(g) demonstrates that there are conditions of release that will ensure the safety of the community and Mr. Foy's return to Court. Given the complete lack of evidence that Mr. Foy ever previously or subsequently planned or participated in political violence, the government cannot articulate a specific danger to the

---

[1] 18 U.S.C. § 3161(c)(1) (requiring trial of defendant seventy days from the filing date of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which the charge is pending, whichever is later).

[2] Undersigned counsel erroneously conceded that there is a rebuttable presumption in this case. *See* First Motion for Bond, Doc. No. 10 at 16. However, as explained herein, counsel erred and there is no such presumption in Mr. Foy's case under the Bail Reform Act.

community beyond the scope of the January 6th events. *United States v. Munchel*, 991 F.3d 1273, 1283 (D.C. Cir. 2021). His detention, therefore, is proscribed under 18 U.S.C. § 3142 and D.C. Circuit's holding in *Munchel*.

    **1.  The Government Has Not Provided Full Discovery Five Months After Mr. Foy's Arrest.**

    This Court has repeatedly stated that it would review the detention order in this case if the government continues to fail to provide full and complete discovery. Since the last status hearing in this case, the government has provided additional discovery. Yet, by the government's own admission, the discovery is not complete. In its response to Mr. Foy's second bond review motion, the government again vaguely promises that "*in the coming weeks*, the government will also provide counsel for the defendant with materials which may include, but are not limited to, statements of similarly situated defendants, forensic searched of electronic devices and social media accounts of similarly situated defendants, and citizen tips." Gov't Response, Doc. No. 30 at 8 (emphasis added). In other words, the government is indicating that it will dump voluminous discovery on defense counsel at some unspecified point in the future. Of course, defense counsel will need ample time to review this discovery to prepare for trial. Therefore, Mr. Foy's preventative detention will likely stretch into fall and winter. For a young man with no prior record, this lengthy preventative detention is squarely in tension with the policy preferences reflected in the Bail Reform Act and the Speedy Trial Act.

    Undersigned counsel appreciates the unprecedented nature of these investigations and prosecutions. Indeed, the single-district volume is likewise unprecedented for the Office of the Federal Defender—there is no asymmetry of burden. Despite the new, concentrated demand on resources, defense counsel have adjusted and worked tirelessly in order to preserve and protect defendants' rights. The party with the discretion to bring the case should do the same: the

government chose to pursue the January 6th prosecutions in the manner it did—arresting defendants *en masse* without first establishing a way to promptly disclose discovery.  Mr. Foy should not have to be detained for months on end because of structural issues that exist by the government's own design, especially because the factors under the Bail Reform Act support release.

### 2.  There is no Rebuttable Presumption for Detention in This Case.

The government extensively cites the Court's initial denial of Mr. Foy's bond motion. There, the Court found that "Mr. Foy has failed to overcome the presumption that no condition or combination of conditions will reasonably assure his appearance as required and the safety of the community." Gov't Resp. Doc. No. 30 at 14 (internal citations omitted).  However, there is no rebuttable presumption in this case.  Undersigned counsel concedes that counsel erred in this regard and were remiss not to correct the error prior to the Court's initial ruling.

Section 3142(e) describes two manners in which the government may establish a rebuttable presumption that detention is necessary to assure the safety of individual persons and the community. 18 U.S.C. § 3142 (e).  Specifically, the government must either show that the defendant has been previously convicted of a crime of violence within the last five years, and that the offense was committed while the person was on release pending trial for a Federal, State, or local offense.  18 U.S.C. §§ 3142 (e)(2).  Alternatively, a presumption applies when a defendant is charged with certain serious enumerated crimes.  18 U.S.C. §§ 3142 (e)(3). Mr. Foy is not charged with one of the enumerated crimes in (e)(3), so the government must show that the presumption applies under subsection 3142(e)(2). The plain reading of subsection 3142(e)(2) makes clear that the (f)(1) presumption only applies to defendants with *prior* (f)(1) offenses resulting in conviction:

> [The rebuttable presumption arises when a] judicial officer finds that—(A) the person has been **convicted** of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed; (B) the offense described […] was committed while the person was on release pending trial for a Federal, State, or local offense; **and** (C) a period of not more than five years has elapsed **since the date of conviction**, or the release of the person from imprisonment, for the offense described […], whichever is later.[3]

Though in this case the government cannot even satisfy (A) because Mr. Foy has no prior convictions, it bears noting that subsections (A)-(C) are *all* required conditions, not bases in the alternative, as indicated by the "and" conjunction used in the series. *Id.*; *see also United States v. Hodge*, No. CRIM. 09-24, 2009 WL 2170052, at *1 (D.V.I. July 20, 2009) ("The [3142(e)(2)] statute is written in the conjunctive and not the disjunctive and, therefore, subparagraph (B) must be applied to the facts at bar also"). Thus, for the presumption to arise, a defendant facing a charge of an (f)(1) offense must have also been convicted of a prior (f)(1) offense (or a state equivalent) while on pre-trial release, within five years of the instant offense. *See id.*

While the meaning is clear from the plain text of § 3142(e)(2), the necessary predicate of a prior conviction is further underscored when contrasted with the language in § 3142(e)(3), which concerns the enumerated offenses:

> it shall be presumed that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community if the judicial officer **finds that there is probable cause** to believe **that the person committed**— (A) **an offense** for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, the Controlled Substances Import and Export Act, or chapter 705 of title 46; (B) **an offense** under section 924(c), 956(a), or 2332b of this title; (C) an

---

[3] 18 U.S.C. 3142(e)(2) (emphasis added).

offense listed in section 2332b(g)(5)(B) of title 18, for which a
maximum term of imprisonment of 10 years or more is prescribed;
(D) **an offense** under chapter 77 of this title for which a maximum
term of imprisonment of 20 years or more is prescribed; **or**
(E) an offense involving a minor victim.[4]

Here, Congress did not require a conviction as a presumption predicate. Instead, it merely required

*probable cause* to believe that the defendant committed "an offense"—meaning *any* qualifying

offense, including the instant offense—because the offenses listed pose serious threats to

community safety. 18 U.S.C. § 3142(e)(3). These bases, unlike the conditions described in

subsection 3142(e)(2), are listed in the alternative, as indicated by the "or" conjunction at the end

of the series. *Id.*

Therefore, by a plain reading of 18 U.S.C. § 3142(e), there is no rebuttable presumption in

this case.  *See Chansley*, No. 21-CR-3 (RCL), 2021 WL 861079, at *5 ("First, a rebuttable

presumption arises if the judicial officer finds that (a) the person has been convicted of certain

listed federal offenses, including a "crime of violence," or similar state offenses, (b) that offense

was committed while the person was on release pending trial for another offense, and (c) not more

than five years has elapsed since the date of conviction of that offense or the release from

imprisonment, whichever is later"); *United States v. Close*, 550 F. Supp. 2d 185, 187 (D. Mass.

2008); *see also United States v. Miller*, 625 F. Supp. 513, 517 (D. Kan. 1985) ("The first of these

[presumptions] arises when it is determined that a person charged with a seriously dangerous

offense *has in the past been convicted of committing another serious crime while on pretrial

release*") (emphasis added); *see also United States v. Hefner*, No. 3:18-CR-00136, 2019 WL

---

[4] 18 U.S.C. 3142(e)(3) (emphasis added).

612704, at *2 (E.D. Tenn. Feb. 13, 2019); *see also Hodge*, No. CRIM. 09-24, 2009 WL 2170052, at *1.

Without the presumption in favor of detention, the government must rely on the subsection 3142(g) factors, which weigh in favor of release.

### 3.   Section 3142(g) Factors Weigh in Favor of Release

Mr. Foy concedes that he is eligible for pretrial detention because he was charged with 18 U.S.C. § 111(b), which under the categorical approach mandated by controlling precedent, is a crime of violence. *See United States v. Singleton*, 182 F.3d 7, 10-12 (D.C. Cir. 1999); *see also* Memorandum Opinion, Doc. No. 56 at 16-17, *United States v. Sabol*, No. 1:21-cr-00035-EGS (D.D.C. Apr. 14, 2021) (collecting cases and concurring that under the categorical approach, § 111(b) is a crime of violence). However, *eligibility* for detention and the *imposition* of detention involve different frameworks: whereas eligibility is a bright-line rule that turns on the elements of the crime as charged and requires only probable cause, the imposition of detention is an as-applied, fact-intensive totality test. *Compare Singleton*, 182 F.3d at 10-12, *with United States v. Munchel*, 991 F.3d 1273 (D.C. Cir. 2021) (holding that the district court must show that it considered the "specific circumstances" of the defendant and of the day [(January 6th)] to determine why their dangerousness exceeds the scope of those events). When the factual circumstances of Mr. Foy's conduct and history are considered, the balance of factors weighs strongly in favor of release.

The specific nature of Mr. Foy's conduct is fully distinguishable from others charged under Section 111 because (1) he is not a member of any anti-government group, including the Proud Boys;[5] (2) he did not travel with or conspire to attend the protest with any such members, or any

---

[5] Affidavit, Doc. No. 6-1 at 2-5, *United States v. Nordean*, No. 1:21-cr-00175-TJK (D.D.C. Feb. 2, 2021) (explaining Mr. Nordean's role in the conspiracy alleged involving various members of the Proud Boys).

other person;[6] (3) he did not bring weapons with him to the District;[7] and (4) he did not make any threats of bodily injury prior to or after January 6th.[8] *See United States v. Quaglin*, No. 1:21-cr-40-TNM (detention ordered for defendant whose media posts suggest he is a member of the Proud Boys and who is depicted on video spraying MK-9 OC directly into an officer's unprotected face and physically striking an officer in the face with a plastic shield. Quaglin's social media posts also suggest that he planned violence for months in advance and celebrated his role after the protest turned into a riot, *see* Doc. No. 14). Thus, even if the factual allegations in the Affidavit are taken as true, the nature and circumstances of Mr. Foy's conduct fall far short of meeting the standard of dangerousness required for pre-trial detention.

The cases the government cites to support detention are inapposite. For one, in three of the cases the government cites, the defendants have significant prior records.[9] Indeed, the government first cites *United States v. Ponder*, 1:21CR259-TSC. Ponder was captured on video striking officers with a pole. After the battery, officers briefly detained Ponder, released him, and told him not to return. Ponder disobeyed orders and returned. Finally, Ponder has a *prior conviction* for a

---

[6] Gov't Memorandum in Support of Pre-Trial Detention, Doc. No. 15 at 4, *United States v. Watkins*, No. 1:21-cr-28-APM-3 (D.D.C. Feb. 11, 2021) (alleging that Ms. Watkins had begun training members for a government coup even before election results were announced).

[7] Affidavit, Doc. No. 1-1, *United States v. Coffman*, No. 1:21-cr-00004-CKK (Mr. Coffman is alleged to have traveled to the District with an M4 assault rifle, multiple loaded magazines, three handguns and 11 mason jars filled with homemade napalm).

[8] Affidavit, Doc. No 1-1, *United States v. Meredith*, No. 1:21-mj-00017-GMH (D.D.C. Jan. 8, 2021) (Mr. Meredith texted a group: "Thinking about heading over to Pelosi (C——'s) speech and putting a bullet in her noggin on Live TV" and "I'm gonna run that (C—-) Pelosi over while she chews on her gums. … Dead (B——) Walking. I predict that within 12 days, many in our country will die").

[9] The government cites two cases—*United States v. Daniel Rodriguez*, 21CR246-ABJ and *United States v. Mellis*, 21CR206-EGS—though it appears those defendants were detained in their arresting districts and have not sought review of detention. Therefore, it is impossible to tell from the record whether these defendants also have prior records or other conduct that would distinguish them from Mr. Foy. *See* Gov't. Response, Doc. No. 30 at 10.

violent crime—bank robbery—nearly putting him within the ambit of the (e)(2) presumption.  *See* Gov't Mem. for Det., Doc. No. 11 at 15.  The government next attempts to rely on *United States v. Sibick*, 1:21CR291.  Sibick also committed a battery against a police officer and ripped a badge and radio from the officer's vest.  He later tried to hide the incriminating evidence and lied to law enforcement officers about his role in the assault, evidencing a clear disrespect for the law.  And just like Ponder, Sibick had a prior criminal record which included "*six* arrests and *five* convictions." Det. Order, Doc. No. 12 at 7-8 (emphasis added).  The government also cites *United States v. Fitzsimons*, 1:21CR1580KKBJ.  Fitzsimons was captured on video grabbing and charging at officers and tearing one officer's gas mask off his face.  The day after the protests, Fitzsimons celebrated the violence in an online town meeting.  Investigation uncovered that Fitzsimons had previously a called Congressional office, identifying himself as "Kyle Fitzsimons, the man who wants to start a war." Gov't Mem. for Det., Doc. No. 7 at 5.  Fitzsimons – unlike Mr. Foy—also has prior convictions.  *Id.*

The government also attempts to rely on *United States v. Padilla*. There, too, the defendant's conduct was far more extreme than Mr. Foy's.  Padilla spoke of "the need to 'tak[e] DC with a [] a heavily armed protest." Det. Order, Doc. No. 24 at 11.  Padilla is charged with three separate assaults on law enforcement, which involved conduct that spanned over three hours. When officers tried to subdue him, Padilla said "I ain't stopping." Furthermore—and in sharp contrast to Mr. Foy—in the days after January 6th, Padilla "repeatedly celebrated the attempt to stop the certification of the election." *Id*. at 12.

The government's attempt to establish similarities between Mr. Foy and the above defendants—three of whom have prior records—is misleading.  Mr. Foy is more similarly situated to defendants who have been released under Section 3142 and the D.C. Circuit's holding in

*Munchel. See e.g.*, Minute Entry, *United States v. Judd*, 1:21CR40-TNM (D.D.C. May 12, 2021) (defendant with no prior record who allegedly tossed a lit firecracker into a crowd of people released to home confinement); *United States v. Emanuel Jackson*, See Minute Entry, 1:21MJ11 (D.D.C. March 2, 2021) (detention order revoked for defendant who was depicted on video striking officers with a baseball bat and defendant ordered into high intensity supervision).

Moreover, it bears repeating that Mr. Foy is a veteran who honorably served this country, has no prior criminal record, and no social history of violence. Mr. Foy's history shows that his alleged conduct on January 6th was an aberration that manifested due to unique and external circumstances. Because those circumstances will not present themselves again, precedent dictates that he be released. *Munchel¸* 991 F.3d at 1283 (holding that the Court must consider the specific circumstances that made the defendant's dangerous conduct possible on January 6th). Finally, as the letters from Mr. Foy's family and community demonstrate, Mr. Foy has strong support in his community and he presents no risk of flight. *See* Letter of Michael W. Cuff Jr., Corporal, USMC Veteran ("I look forward to a successful reintegration of Michal Foy, not an imprisoned one, as prison is not what Michael Foy needs").[10]

## Conclusion

If Congress had intended for those charged with a crime of violence to be detained irrespective of fact, context, and history of lawful behavior, it would have included the offense in the category of crimes warranting a rebuttable presumption. It did not. Instead, it crafted a narrow rebuttable presumption category and imposed a burden of clear and convincing evidence to show dangerousness absent the presumption. It indicates a strong preference for pre-trial release, and

---

[10] *See* First Motion for Bond, Doc. No. 10, Exh, 3 (describing Mr. Foy "one of the most caring, nice and passionate individuals I have ever come to know").

that policy preference should be respected here. The government has not come close to proving dangerousness in this case.

Bail conditions including home confinement, electronic GPS monitoring, and third-party custody would be more than sufficient to mitigate any risk to the community and to secure Mr. Foy's appearance in court.  For all of the reasons stated above and in Mr. Foy's first and second motions for bond, the Court should reject the government's request for pretrial detention and should release Mr. Foy with conditions.

Respectfully submitted,

Michael Foy
By Counsel

_____-s-_____
Elizabeth Mullin
Assistant Federal Public Defender
Counsel for Michael Foy
Virginia Bar Number 86668
DC Bar Number 484020
1650 King Street, Suite 500
Alexandria, Virginia  22314
(703) 600-0879 (T)
(703) 600-0880 (F)
Elizabeth_Mullins@fd.org (e-mail)