**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| v. ) | Criminal No. 21-cr-00108 (TSC) |
| ) | |
| **MICHAEL JOSEPH FOY**, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**MEMORANDUM OPINION**

Michael Joseph Foy has been charged with eight misdemeanor and felony offenses arising from his participation in the riots at the U.S. Capitol on January 6, 2021.  ECF No. 6, Indictment.  Following a detention hearing before Magistrate Judge Patricia Morris in the U.S. District Court for the Eastern District of Michigan, Foy was ordered detained pending trial. After his arraignment in this court, Foy moved for review of the detention order.  On March 15, 2021, after a hearing, this court denied Foy's motion and ordered that he remain detained pending trial.

Foy filed a second motion for release, ECF No. 22, Def. Mot., and the court held a hearing on the renewed motion on June 2, 2021.  For the reasons set forth below, and upon careful consideration of the motion, the government's opposition, the defendant's reply, the government's June 9, 2021 surreply, the arguments set forth during the June 2, 2021 hearing, the applicable law, and the entire record herein, the court will GRANT the motion for release and will order Foy to be released to home confinement with GPS monitoring and other conditions of supervision.

## I.      BACKGROUND

Foy, a former United States Marine with no prior criminal record, has been indicted on

eight counts: civil disorder, in violation of 18 U.S.C. §231(a)(3); obstruction of an official

proceeding and aiding and abetting, in violation of 18 U.S.C. §1512(c)(2); assaulting, resisting,

or impeding certain officers using a dangerous weapon, in violation of 18 U.S.C. §§111(a)(1)

and (b); entering and remaining in a restricted building or grounds with a deadly or dangerous

weapon, in violation of 18 U.S.C. §§1752(a)(1) and (b)(1)(A); entering and remaining in a

restricted building or grounds, in violation of 18 U.S.C. §1752(a)(1); disorderly and disruptive

conduct in a restricted building or grounds, in violation of 18 U.S.C. §1752(a)(2); engaging in

physical violence in a restricted building or grounds, in violation of 18 U.S.C. §1752(a)(4); and

an act of physical violence in the capitol grounds or buildings, in violation of 40 U.S.C.

§5104(e)(2)(F).

The parties do not contest that Foy was at the U.S. Capitol on the afternoon of January 6,

2021 when protesters stormed the building and attacked law enforcement officers, disrupting the

joint session of the United States Congress that had convened to certify the vote count of the

2020 Presidential Election Electoral College.  ECF No. 2-3, Stmt. of Facts, at 1.  Despite the

efforts of the U.S. Capitol Police and Metropolitan Police, shortly after 2:00 p.m. individuals in

the crowd forced their way into the Capitol building.  *Id.*  At approximately 2:20 p.m., members

of both houses of Congress and then-Vice President Mike Pence were evacuated from the House

and Senate chambers and the joint session of Congress was suspended.  *Id.*

A wide array of footage obtained by law enforcement shows an individual identified as

Foy throwing a projectile and aggressively and repeatedly swinging a hockey stick towards law

enforcement officers positioned outside of the center doorway of the Lower West Terrace of the

U.S. Capitol.  *See* Gov't Exs. 1, 2, 4, 5 to Opp. to First Bond Review Mot.  The stick in the footage matches one later found in Foy's Michigan apartment.  ECF No. 30, Gov't Opp. at 2 n.1.  Shortly after the attack on the police officer, video footage shows this individual motioning his arms, seemingly urging other protesters forward, and ultimately climbing through a window into the U.S. Capitol, hockey stick in hand.  *See* Gov't Ex. 3 to Opp. First Bond Review Mot. Opp.

## II.     LEGAL STANDARD

In our society, "liberty is the norm" and "detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act, 18 U.S.C. § 3141 *et seq.*, thus provides that a defendant must be released pending trial unless it is determined that no condition or combination of conditions exist which will reasonably assure his appearance as required or the safety of the community.  18 U.S.C. § 3142(c).  "In common parlance, the relevant inquiry is whether the defendant is a 'flight risk' or a 'danger to the community.'"  *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir. 2021) (quoting *United States v. Vasquez-Benitez*, 919 F.3d 546, 550 (D.C. Cir. 2019)).

When the basis for pretrial detention is the defendant's danger to the community, the government is required to demonstrate the appropriateness of detention pursuant to subsection (e) by clear and convincing evidence.  18 U.S.C. § 3142(f).  Short of that, a judicial officer is generally required to release the defendant "subject to the least restrictive condition or combination of conditions" to effect these goals.  *Id.*  The factors that must be considered in assessing the defendant's future dangerousness, as set forth in § 3142(g) are:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence . . . ;
(2) the weight of the evidence against the person;
(3) the history and characteristics of the person . . . ; and
(4) the nature and seriousness of the danger to any person or the community that would be posed by his release.

18 U.S.C. § 3142(g); *see also Munchel*, 991 F.3d at 1279–80; *United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).

Notwithstanding this general rule, certain conditions and charged offenses trigger a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any person or the community.  18 U.S.C. § 3142 (e)(2)–(3) (providing that a rebuttable presumption arises pursuant to subsection (e)(2) if the defendant committed a "crime of violence" while on release pending trial for another offense and not more than five years after the date of conviction or the release of the person from imprisonment for that offense, or pursuant to subsection (e)(3) if there is probable cause to believe the defendant committed one of a subset of offenses listed in that section).  This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption."  *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018) (citing *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985)).  Moreover, where the presumption applies, even if a defendant rebuts the presumption, it "remains a factor to be considered" among the other § 3142(g) factors to be weighed in determining whether pretrial detention is warranted. *Taylor*, 289 F. Supp. 3d at 63 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)); *see also United States v. Ali*, 793 F. Supp. 2d 386 (D.D.C. 2011).

### III.    DISCUSSION

#### A. <u>Applicability of the Rebuttable Presumption</u>

In this case, the government contends—and Foy initially conceded, *see* ECF No. 10, First Bond Review Mot., at 9—that the court is to "presume[] that no condition or combination of conditions will reasonably assure" his appearance as required and the safety of the community because Foy has been charged with a crime of violence.  Gov't Opp. at 11–14; *see also* 18

U.S.C. §§ 3142(f)(1), (e)(1)–(2).  If this presumption applies, Foy would be required to "offer some credible evidence" that he will not endanger the community or flee if released.  *Id.* at 32. However, in his Reply in support of this motion, Foy withdrew his prior concession and argued that the rebuttable presumption does not apply in this case.  ECF No. 31 at 3–6.  Based on the plain text of the statute and available case law, the court agrees.

The statute sets forth two circumstances in which the rebuttable presumption applies. Subsection 3142(e)(3) provides that the rebuttable presumption arises when there is probable cause to believe that the defendant committed one of a subset of offenses enumerated therein. *See* 18 U.S.C. § 3142(e)(3).  Foy has not been charged with one of these enumerated crimes. Thus, for the presumption to apply, it must do so under subsection 3142(e)(2), which states:

> [The rebuttable presumption arises when a] judicial officer finds that—(A) the person has been convicted of a Federal offense that is described in subsection (f)(1) of this section, or of a State or local offense that would have been an offense described in subsection (f)(1) of this section if a circumstance giving rise to Federal jurisdiction had existed; (B) the offense described […] was committed while the person was on release pending trial for a Federal, State, or local offense; *and* (C) a period of not more than five years has elapsed since the date of conviction, or the release of the person from imprisonment, for the offense described […], whichever is later.

18 U.S.C. § 3142(e)(2) (emphasis added).

The plain text of the statute supports Foy's argument.  The text uses the word "and" rather than "or" and therefore the statute is conjunctive not disjunctive.  In other words, each of the listed elements must be present for the presumption to arise.  While there is minimal case law on this issue, what there is supports Foy's position.  *See, e.g.,*[1] *United States v. Carter*, 2021 WL 687858 (S.D. Ohio 2021) ("The rebuttable presumption under § 3142(e)(2) arises only when each of three conditions is met . . . .  Absent any of these elements, the rebuttable presumption

---

[1]  Although the cited cases are not binding on this court, the court finds their analysis to be persuasive.

does not apply."); *United States v. Barner*, 743 F.Supp.2d 225 at 228–29 (W.D.N.Y 2010) ("§ 3142(e)(2) contains three subparagraphs . . . *all* of which must be satisfied in order for the presumption to arise."). Although Foy is currently charged with a wide array of crimes stemming from his alleged violent, armed assault on a police officer during the events at the United States Capitol, Foy has no prior convictions. Therefore, the rebuttable presumption does not apply under § 3142(e)(2).

**B.  Analysis of the § 3142(g) Factors**

As the rebuttable presumption does not apply here, the court must determine, on the evidence and the record before it, whether the Defendant should nevertheless be held pending trial pursuant to 18 U.S.C. § 3142. Title 18 U.S.C. § 3142(e)(1) authorizes the court to detain a defendant if, upon consideration of the factors set forth at § 3142(g), the court finds that no condition or combination of conditions will reasonably assure the appearance of the defendant and the safety of any other person or the community.

In applying these factors, the court first observes that charges against Foy are unquestionably serious and deeply troubling. *See* 18 U.S.C. § 3142(g)(1) (directing judicial officers to consider "the nature and circumstances of the offense charged"). Foy is charged with multiple felonies not for his mere presence at the U.S. Capitol on January 6, 2021, but for his alleged participation in violent confrontations with uniformed officers protecting the entrance to the building during proceedings critical to our nation's democracy. Counts two and three of the Indictment, which charge Foy with obstruction of an official proceeding and assaulting, resisting, or impeding certain officers using a dangerous weapon, respectively, carry statutory maximum penalties of twenty years in prison. *See* 18 U.S.C. §§1512(c), 111(b). Moreover, unlike many other participants in the events of January 6, Foy is alleged to have both engaged in a physical

attack on law enforcement officers and to have breached the Capitol building itself.  Stmt. of Facts at 6.  As Chief Judge Howell recently observed, "[t]he actions of this violent mob, particularly those members who breached police lines and gained entry to the Capitol, are reprehensible as offenses against morality, civic virtue, and the rule of law." *United States v. Chrestman*, No. 21-mj-218, 2021 WL 765662, at *13 (D.D.C. Feb. 26, 2021).[2]  Judge Randolph Moss likewise noted that "[t]his was a singular and chilling event in U.S. history, raising legitimate concern about the security—not only of the Capitol building—but of our democracy itself." *United States v. Cua*, No. 21-107 (RDM), 2021 WL 918255, at *3 (D.D.C. Mar. 10, 2021).  And as the D.C. Circuit stated, "[i]t cannot be gainsaid that the violent breach of the [U.S.] Capitol on January 6 was a grave danger to our democracy, and that those who participated could rightly be subject to detention to safeguard the community." *See Munchel*, 991 F.3d at 1284–85.

Nor is there any shortage of evidence supporting the charges against Foy.  *See* 18 U.S.C. § 3142(g)(2) (directing judicial officers to consider "the weight of the evidence against the person").  The court has reviewed an array of video and photographic exhibits from multiple

---

[2]  In *Chrestman*, Chief Judge Howell outlined six factors to be considered in assessing the "nature and circumstances" of offenses related to the events of January 6, 2021 at the United States Capitol, including whether a defendant:  (1) "has been charged with felony or misdemeanor offenses"; (2) "engaged in prior planning before arriving at the Capitol, for example, by obtaining weapons or tactical gear"; (3) carried or used "a dangerous weapon, whether a firearm, a large pipe, a wooden club, an axe handle, or other offensive-use implement"; (4) "coordinat[ed] with other participants before, during, or after the riot"; or (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct"; as well as (6) the nature of "the defendant's words and movements during the riot," including whether he "damaged federal property," "threatened or confronted federal officials or law enforcement, or otherwise promoted or celebrated efforts to disrupt the certification of the electoral vote count during the riot." *Chrestman*, No. 21-mj-218, at *7–9.  These considerations have guided the court's analysis of the "nature and circumstances" of Foy's charged offenses in this case.

sources and vantage points in which Foy can be seen using his hockey stick to strike officers during a confrontation at the Lower West Terrace tunnel entrance to the Capitol Building on January 6, 2021, and subsequently climbing with his hockey stick through a broken window into the Capitol.

However, Foy's "history and characteristics" tip the scales—just barely—in favor of his release.  *See* 18 U.S.C. § 3142(g)(3).  Foy, who has no prior criminal record, was honorably discharged from the United States Marine Corps in June of 2020, after approximately five years of service,[3] and had been living with family members in their Michigan home throughout the pandemic.  *Id.*

And the D.C. Circuit has made clear that detention is not appropriate for all defendants who participated in the January 6 riots.  *Munchel,* 991 F.3d at 1283.  For detention to be appropriate in such cases on the basis of a defendant's "dangerousness," the "court must *identify an articulable threat* posed by the defendant to an individual or the community.  The threat need not be of physical violence, and may extend to 'non-physical harms such as corrupting a union'. . . .  But it must be clearly identified."  *Id.* (emphasis added) (quoting *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988)).

Unlike other January 6 cases, there is no evidence that Foy planned in advance to attend the rally or coordinated with other participants.  *Compare United States v. Dresch*, No. 21-CR-0071 (ABJ), 2021 WL 2453166, at *1 (D.D.C. May 27, 2021) (defendant made a series of posts to social media prior to January 6th, including statements that he was "prepared for chemical

---

[3]  As noted during the hearing on this motion, Foy's military service cuts both ways in the court's analysis.  Although his history of respect for and compliance with authority indicates an increased likelihood that he will comply with release conditions this court sets, Foy, unlike many other January 6 defendants, took an oath to "support and defend the constitution of the United States"—an oath he appears to have broken on January 6, 2021.

attacks and what not," and "NO EXCUSES! NO RETREAT! NO SURRENDER! TAKE THE STREETS! TAKE BACK OUR COUNTRY! 1/6/2021=7/4/1776"), and *United States v. Sabol*, No. 21-CR-35-1 (EGS), 2021 WL 1405945, at *10 (D.D.C. Apr. 14, 2021) (defendant "engaged in prior planning that suggests his assaultive conduct and civil disorder did not merely arise 'in the context of a hysterical throng'" and "brought tactical gear, including a helmet, steel-toe boots, zip ties, a radio and an ear piece"), *with* First Bond Review Mot. at 3 ("Mr. Foy initially had not plans [sic] to attend the protest in Washington D.C.  But in the early morning hours of January 6th, he decided to drive from his home in Michigan to the District.")  Nor did he promote or celebrate the events of the day or his own actions after the fact.  *See, e.g.*, *Dresch*, No. 21-CR-0071 (ABJ), at *3 (defendant posted extensively to social media following the events of January 6, at one point stating that "it was grand . . . best day ever . . . I think it was a good show of force . . . look what we can do peacefully, wait til [sic] we decide to get pissed" and later concluding "look if they can't hold the capitol with thousands of cops, how can they tell us what to do 1000 miles away"); *United States v. Whitton*, No. CR 21-35-5 (EGS), 2021 WL 1546931, at *8 (D.D.C. Apr. 20, 2021) (defendant bragged in a text message to an acquaintance that he "fed [Officer B.M.] to the people"); *Sabol*, No. 21-CR-35-1 (EGS), at *10 (defendant "maintained, even days after the riot when he believed he was wanted by the FBI, that he had been "fighting tyranny in the D.C. Capitol").

In considering "the nature and seriousness of the danger to any person or the community that would be posed by [Foy]'s release," 18 U.S.C. § 3142(g)(4), the court is mindful of the D.C. Circuit's caution that a future threat must be "clearly identified" for pretrial detention to be justified, particularly given that "the specific circumstances of January 6 have passed." *Munchel*¸ 991 F.3d at 1283–84.  "Consideration of this factor encompasses much of the analysis

set forth above, but it is broader in scope," requiring an "open-ended assessment of the 'seriousness' of the risk to public safety." *Cua*, 2021 WL 918255, at \*5 (quoting *Taylor*, 289 F. Supp. 3d at 70).  "Because this factor substantially overlaps with the ultimate question whether any conditions of release 'will reasonably assure . . . the safety of any other person and the community,' 18 U.S.C. §3142(e), it bears heavily on the Court's analysis." *Id.* (alteration in original).

The court does not doubt that Foy's actions posed a grave danger to the officers present at the Capitol building on January 6, the lawmakers performing their duties inside, and to the security of our democracy itself.  And yet, the gravity and unsettling nature of Foy's actions must be considered in the context of his long history of law-abiding behavior, his military service, and the absence of any remarks promoting or celebrating the events of January 6 or indicating a willingness or desire to engage in ongoing violence.  *Cf. United States v. Klein*, No. CR 21-236 (JDB), 2021 WL 1377128, at \*11 (D.D.C. Apr. 12, 2021) ("[D]espite his very troubling conduct on January 6, the Court finds on balance that Klein's history and characteristics point slightly toward release.").

After much deliberation and close consideration of the parties' arguments, therefore, the court cannot at this time find "that no conditions or combination of conditions exist which will reasonably assure his appearance as required or the safety of the community." *See* 18 U.S.C. § 3142(e).  In light of the shocking and violent nature of Foy's actions, however, the court does find that the close supervision provided by home confinement is needed to ensure the ongoing safety of the community and of our democratically-elected government.

## IV.    CONCLUSION

For the foregoing reasons, the court will GRANT Foy's Motion to Release from Custody, ECF No. 22, and will release him into home confinement with GPS monitoring under the courtesy supervisions by the Pretrial Services Agency of the Eastern District of Michigan.  A corresponding order is forthcoming.

Date:  July 2, 2021

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge