UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


UNITED STATES OF AMERICA,      .
                               .
          Plaintiff,           .   CR No. 21-0108 (TSC)
                               .
     v.                        .
                               .
MICHAEL JOSEPH FOY,            .   Washington, D.C.
                               .   Monday, February 7, 2022
          Defendant.           .   10:07 a.m.
. . . . . . . . . . . . . . . . .


TRANSCRIPT OF STATUS HEARING
BEFORE THE HONORABLE TANYA S. CHUTKAN
UNITED STATES DISTRICT JUDGE


APPEARANCES:

For the Government:        EMORY V. COLE, AUSA
                           U.S. Attorney's Office
                           555 Fourth Street NW
                           Washington, DC 20530
                           (202) 252-7566


For the Defendant:         EUGENE OHM, AFPD
                           Federal Public Defender
                           625 Indiana Avenue NW
                           Suite 550
                           Washington, DC 20004
                           (202) 208-7500

                           ELIZABETH A. MULLIN, AFPD
                           Federal Public Defender
                           1650 King Street
                           Suite 500
                           Alexandria, VA 22314
                           (703) 600-0879


Court Reporter:            BRYAN A. WAYNE, RPR, CRR
                           U.S. Courthouse, Room 4704-A
                           333 Constitution Avenue NW
                           Washington, DC 20001
                           (202) 354-3186

1           P R O C E E D I N G S

2              (Via Videoconference)

3           THE DEPUTY CLERK:  Your Honor, we have criminal action

4    21-108, United States of America versus Michael Foy.  We have

5    Mr. Emory Cole representing the government and Mr. Eugene Ohm

6    and Ms. Elizabeth Mullin representing the defendant, and all

7    parties are appearing by video.

8           THE COURT:  Good morning.

9       Mr. Foy, can you hear me?

10          THE DEFENDANT:  Yes, ma'am.  I can hear you.

11          THE COURT:  All right.  Any objection to proceeding

12   by videoconference pursuant to the CARES Act?  Hearing none?

13   All right.  A reminder that any publication or broadcast or

14   taking of screenshots of this hearing is strictly prohibited.

15      Okay.  So in anticipation of this hearing, I got -- Mr. Ohm

16   filed a letter setting forth seven outstanding discovery

17   items.  Mr. Cole, have you had a chance to look at this?

18          MR. COLE:  I have briefly, Your Honor, but I want

19   to put something on the record whenever the Court feels it's

20   time for me to put something on the record that is important

21   regarding this matter.

22          THE COURT:  All right.  Go ahead.  If you say it's on

23   the record.

24          MR. COLE:  Yes, Your Honor, but I say that as a matter

25   of course and respect for the Court.

1      Your Honor, we had our last hearing January 5, 2022.

2   At that point, the government had an outstanding, written,

3   approved plea offer to the defendant.  It's been that way

4   for about four or five months without any word one way or

5   the other, which is very unusual.  I've never had that to

6   happen.  Out of respect --

7      THE COURT:  Well, hold on a second, Mr. Cole, but

8   when we were here on January...

9      MR. COLE:  Fifth.

10      THE COURT:  I have the 3rd, but I guess it's the

11   5th?  You did put on the record that you had extended an

12   offer for much longer than was normal, which I appreciated,

13   and Mr. Ohm said he hadn't gotten full discovery because

14   of certain technical issues; and you I think were surprised

15   by that, but you said that the plea offer that you gave to

16   Mr. Foy was not going to stay open for much longer.

17      So I remembered saying at our last status hearing that

18   if the plea was not -- if there hadn't been a plea agreed

19   to that I would be inclined to set a trial date.  So I do

20   remember that you were -- you know, you were extending an

21   offer longer than is customary.

22      MR. COLE:  No, it was extended because I thought

23   it was in the interest of justice and fundamental fairness,

24   Your Honor.

25      THE COURT:  And I appreciate that, Mr. Cole.

1          MR. COLE:  And out of respect for the Court, this

2     extended, extended plea offer.  And that was on or about

3     January 5, 2022.

4          Your Honor, from that day till today, there's been

5     no vocal outreach to the government one way or the other

6     regarding the plea offer, in which that is unusual and

7     shocking indeed -- you know, yes, no, maybe so.  The plea

8     offer now is formally withdrawn at this time because there

9     has been nothing -- I mention the date because it's critically

10    important.  Months now have passed.

11         The first thing I heard from Mr. Ohm or anyone happened

12    to be an email on February 2 at 7:18 p.m.  That email from

13    Mr. Ohm stated, "Hi, do you have some time to chat tomorrow?"

14    With that, Your Honor, the following day, on February 3 at

15    11:29 a.m., Mr. Ohm sent me an email.  This is what it said:

16         "I recently discovered that the zip files that you uploaded

17    to production No. 5 did not upload correctly.  Can you please

18    upload them?"

19         With that email, Your Honor -- and be mindful of the

20    fact that I am currently in intense preparation for a multi-

21    defendant, in-custody, three-defendant trial that's set before

22    Judge Moss this week.  But, with that, when Mr. Ohm sent me

23    that email, what did I do about production No. 5, and that was

24    on Thursday, February 30 at 11:29 a.m.?

25         On that same day, what I did, Your Honor, which is

consistent with my professional ethics, on February 3 at

12:10 p.m., I sent that request to my paralegal to address

this particular concern that Mr. Ohm had had.  And this is

Thursday before our hearing today on Monday.  That is

customary.  That's what we do as professionals.

So I did that so my paralegal could get on it with all

of their other activities and trial prep, because she's trial

prepping with me in this multidefendant case.  But it's not

unusual; we'll get it done.

I want to note for the record also that this is not the

first case Mr. Ohm and I have had.  Mr. Ohm, if it's something

important or if he wants to talk to me, he has my cell phone

number; and I have always answered his call, and we have

talked in a collegial, professional fashion at all times.

The other issue I want to bring, Your Honor, is that next,

after Thursday, then there's the filing Friday.  That filing

happened that Friday before Saturday and Sunday and then

Monday today.  The filing was Friday, February 4, at 8:18 p.m.

8:18 p.m.  And that's where this letter now -- on Thursday it

was just production 5, just to correct the zip drives.

On Friday, he now puts this particular letter.  I don't

view that letter as something of any particular import;

however, if it was important to Mr. Ohm, all he had to do

on January the 5th, 6th, 7th, any day in January, just let me

know, because as the Court knows, and Mr. Ohm --

1          THE COURT:  You mean February.

2          MR. COLE:  No.  I'm saying he could have let me know

3     if there was a discovery issue in January and in February,

4     Your Honor.

5          THE COURT:  Okay.

6          MR. COLE:  Prior to that time.  And, if Mr. Ohm could

7     have always called me, because we've had talks before.  And

8     there has never been -- as I have appeared before you on many

9     occasions, there has never been an issue with me in discovery.

10    And we could have -- I was a little taken aback by the

11    extended discovery issues - and I put that "quote-unquote" -

12    when it was filed at 8:18 p.m. on Friday flight.

13         How, then, could I reasonably have an opportunity to

14    address it if it was important to Mr. Ohm or to the defense?

15    Mr. Ohm could have called me at any time, and we could have

16    addressed this issue without the Court's intervention.

17         If, however, I did not respond in a timely fashion, or he

18    was not happy with my response, then I would say the Court

19    can get involved.  But how can I be responsible to stop my

20    trial prep at 8:18?  At some point I have other matters to

21    do on a Friday night that late.

22         Having said that, Your Honor, in this particular case

23    I don't anticipate that there would be any discovery issues,

24    because, obviously, it wasn't important enough to let me know

25    in a timely fashion.  I will address these issues in due

1    course, and I will assure the Court there will be no issue.

2        But to the extent that the plea offer has not been

3    addressed at all, and it's not respectful at this particular

4    time to hold it over, I've done all that I can do and all the

5    respect to this court and your standing to keep it open, it is

6    now formally closed.  I would respectfully ask -- and you said

7    it, Your Honor -- for a trial date in this matter.  I think

8    it's important now.  The victims in this case deserve their

9    right to be heard based on the vicious attacks by this

10   defendant.

11            THE COURT:  All right, Mr. Cole.  Thank you.

12            MR. COLE:  Can I just say --

13            THE COURT:  I'm happy to let you say -- you know,

14   yes, this is a vicious attack, but I just ask you to turn

15   down the hyperbole a little bit.  It's Monday morning.

16            MR. COLE:  Your Honor, it was Friday morning when

17   I got notice of the discovery.

18            THE COURT:  I understand, and I'm going to ask Mr. Ohm

19   about that.

20            MR. COLE:  At 8:18 p.m.  But, to that extent, Your

21   Honor, this is where I am.  I am acutely aware of the Court's

22   trial schedule regarding incarcerated defendants, and they

23   take priority.  I am acutely aware of that, one.

24        Two, I have a pretrial status before Judge Moss today

25   at 2:30 on my three-codefendant, in-custody matter.  It is

1    scheduled now for jury selection February 11 - that's this

2    Friday - and if it doesn't go, we anticipate it might be a

3    continuance sometime in the next -- sometime in the next 30

4    or 45 days.

5         THE COURT:  Well, I'm the one who's going to be

6    setting it, so I'll know when it is.  I'm controlling the

7    master calendar.

8         MR. COLE:  Oh, great, Your Honor, so therefore you

9    are aware of that.  But we go back to court with Judge Moss

10   at 2:30 today.  So that's where we are.  I would anticipate

11   that if you have a date sometime after the summer, because I'm

12   aware that there's a host of incarcerated January 6 defendants

13   who are coming up in the preceding months and the summer

14   months, I would ask for a trial date sometime this summer or

15   September or October so that we can have a full and fair trial

16   in this matter.

17     I thank you, Your Honor, for listening to me.  That's what

18   I wanted to put on the record.

19         THE COURT:  Okay.  I appreciate that.

20     Mr. Ohm, Mr. Cole makes some good points.  He's accessible.

21   Filing this letter on February 4th is kind of -- I mean, it's

22   a Friday.  Today's Monday.

23         MR. OHM:  Your Honor, I emailed him on Thursday,

24   which Mr. Cole --

25         THE COURT:  All right.  But why wasn't this resolved?

1    We've had a month since our last status hearing -- hold on;

2    let me finish.  Why is this coming up in the week before our

3    status hearing today?

4            MR. OHM:  I mean, Your Honor, if that's something

5    I need to apologize for, I'll apologize for it.

6            THE COURT:  Well, I mean -- wait.  Hold on.  That's

7    kind of a non-apology.  Mr. Cole has said at the last status

8    hearing that he's always available to you; you can call him.

9    I don't have any indication that you guys have a difficult

10   working relationship.

11     I know you're swamped.  I know he's swamped.  I'm swamped.

12   Ms. Mullin's swamped.  We're all very, very busy, and I

13   understand we're doing triage with these cases, but it is

14   a little unfair to him to email him on Thursday and send a

15   letter on Friday about stuff that could have been raised

16   previously and that I now have to deal with, if I have to

17   deal with it.

18     Separate and apart from that, there's a plea offer.

19   There's a plea offer that's been extended to your client

20   past its expiration period and I understand is now going

21   to be withdrawn as of today or at the end of this hearing.

22   So what's your position here?

23           MR. OHM:  I don't think I can have a position on

24   whether the government withdraws its plea offer.  It's

25   certainly their prerogative.

1          THE COURT:  Mr. Ohm, hold on.  You knew.  You knew

2    at the last status hearing.  Mr. Cole made it very clear,

3    and it was not unreasonable to him, that the plea offer had

4    been extended longer than is customary and it would not be

5    extended indefinitely.  You said at the time that in order

6    to properly assess a plea offer, you had to make sure you had

7    the discovery.  That is also a reasonable position.

8          Therefore, it was incumbent on you, knowing Mr. Cole's

9    position, that this offer was going to be withdrawn.  And

10   I said at the status hearing that I'll be setting a trial date

11   at today's hearing if there was no resolution on the plea.

12         It was incumbent on you to get the discovery issues cleared

13   up not four days before the status hearing, but right after

14   the last status hearing, or the week after that, but not four

15   days before the status hearing.  Not on a Thursday and a

16   Friday.

17         So we're in a position now where you say, well, I don't

18   see how I can advise my client on this plea offer because the

19   discovery isn't completed, but that is not Mr. Cole's fault.

20   That's not Mr. Cole's fault.  And if your client -- my role

21   here in overseeing this trial is I'm now faced with a

22   situation where the government's withdrawing a plea offer

23   which your client hasn't had a chance to reject or accept,

24   and it's not, as far as I can tell, the government's fault --

25         MR. OHM:  Your Honor --

1          THE COURT:  -- in terms of the discovery.

2       So you're in the position -- Mr. Ohm, hold on.  We're in

3    delicate territory here.  If your client is not given the

4    benefit of an offer and has to go to trial and is convicted on

5    all the counts against him, there are going to be some issues

6    with regard to his opportunity to take advantage of a plea

7    offer.  That's all I can -- I'll set a trial date right now.

8          MR. OHM:  In this and every other case -- Mr. Cole made

9    a plea offer before we asked for one, and in this and every

10   other case that I have, which is about 10 or 11 of them, I've

11   said until the government completes discovery, I am not going

12   to consider this plea offer.  Every other AUSA --

13         THE COURT:  Mr. Ohm, I'm sorry.  That's not a

14   reasonable position.  It is customary -- that may be your

15   position, but I don't think it's reasonable in every case.

16   It is customary for the government to extend a plea offer

17   when the government believes it's time to extend a plea offer.

18   You can ask for it to be extended.  You can say I don't think

19   I can properly consider this until I have all the discovery.

20   That's what you did previously, two times previously.

21         MR. OHM:  I'm just --

22         THE COURT:  But you then --

23         MR. OHM:  -- trying to --

24         THE COURT:  No, please don't interrupt me.

25       For you to unilaterally say, I am never going to be in

1     a position to consider or advise my client on a plea offer

2     until I feel the discovery is complete and I'm going to raise

3     whatever lack of -- you know, whatever the discovery issues

4     are, I'm going to raise them the Thursday before our Monday

5     status hearing, when the government has made it clear that the

6     plea offer is expiring, I don't think is fair.  I don't think

7     it's fair to Mr. Cole.  I don't think it's fair to this court

8     and to this proceeding.

9       I know you're swamped, but I just don't think that's a

10    position you can legitimately take, because you're not --

11    you're unilaterally saying, you know, it's the government's

12    fault why I can't get a plea offer; keep it open until I'm

13    ready.  That's not how things work.

14           MR. OHM:  Your Honor, if I may?

15           THE COURT:  Yes.

16           MR. OHM:  I agree that it's not that -- that's not a

17    reasonable position in any kind of case, but in a case where

18    the government has been asking for exclusion of speedy time

19    for six months so that they can upload their discovery on a

20    database and we do not have access to that database and

21    Mr. Cole knows very well when we're getting access to that

22    database -- and it's in the letter if he doesn't know it --

23    then it is a reasonable position.

24      We've literally been waiting this entire time for them

25    to put discovery onto Relativity.  We have not had access

1    to Relativity.  So we've waited six months for them to be

2    able to theoretically give us access to it, and we haven't had

3    access to it, and Mr. Cole knows full well that we don't have

4    access to that information.  The fact that --

5              THE COURT:  Mr. Ohm --

6              MR. OHM:  -- he's coming in here and everybody's coming

7    in here saying, oh, my god, this is so shocking that this is

8    the defense's position, we've been saying all along we need

9    to see all the discovery that the government has been saying

10   is important enough, where in 95 percent of these cases they

11   say, well, they need to get it up on Relativity, and we got

12   our password last week, only one of us got our password and

13   the other person hasn't had the training, we don't have actual

14   meaningful access to this discovery.

15       And like I said last time, Mr. Cole knows this, but it's

16   not something Mr. Cole can change.  He can't go to Deloitte

17   and say, make sure Ms. Mullin has a password.  We're doing it

18   the way we're instructed to do it.

19       Now we're starting to get access.  I've been waiting

20   until we actually have gotten the email saying we have access.

21   I've had to spend most of last Friday just trying to get my

22   user name and passcode because Deloitte has all these little

23   hoops to jump through.  Mr. Cole knows that we're going

24   through this because every single defense lawyer is going

25   through this in every single one of these cases.

1          THE COURT:  And yet, Mr. Ohm, you're the only lawyer --

2     this is the only case in which this has happened.  And that's

3     extraordinary.  This is the only case where this is going on.

4     I've not had this happen in any other case.

5          MR. OHM:  I don't know what to tell you, Your Honor,

6     but I --

7          THE COURT:  I don't know what to tell you either, but

8     what I tell you it is this: the government is within their

9     discretion to extend or withdraw a plea offer, and they've

10    withdrawn it.

11         MR. OHM:  Again, that's their prerogative, Your Honor.

12         THE COURT:  It is their prerogative.

13       Mr. Ohm, I'll say -- and I'm not telling you how to run

14    your case or how to work up your case.  You have a case where

15    your client is charged with physically assaulting police

16    officers on January 6.  There is extensive evidence,

17    videotapes and photographs, that I have seen, that I saw on

18    the bond review motion, that pertains specifically to your

19    client.

20       Now, I understand there's a huge amount of evidence

21    regarding the events of that day and that all of which may

22    not yet be available to you, but are you telling me that until

23    you see the entirety of what is out there, every single piece

24    of evidence, that you're not in a position -- knowing that

25    there's a *Brady* obligation that the government has, okay?

1    Knowing that you've already asserted a possible self-defense

2    claim for your client -- not that that's what you're going

3    with, but that that is a possibility, are you telling me that

4    there's no way you can properly assess a plea offer till

5    you've seen every single thing that the government has

6    uploaded?

7          MR. OHM:  No, Your Honor.  I'm not saying that.

8    I'm saying that --

9          THE COURT:  What is it you're saying?  The position

10    you're taking is that you cannot properly advise your client

11    about whether to take a plea offer, and therefore he's going

12    to have to set a trial date and reject the offer because you

13    haven't seen a hundred percent of the evidence that's out

14    there instead of the fact that you may have seen 90 percent

15    of what the government will intend to introduce against your

16    client?

17     I mean, I don't know that -- like I said, this is the only

18    case of all the January 6 cases that I have -- and I have

19    many, many, many January 6 cases that have felonious

20    assaultive conduct allegations -- where this is happening.

21     Mr. Cole, the items in --

22          MR. OHM:  Your Honor, if I may --

23          THE COURT:  -- the letter --

24          MR. OHM:  -- just say a couple of things to complete

25    the record?

1          THE COURT:  Yes.

2          MR. OHM:  Number one, Relativity was literally just

3     rolled out in the last week.  It would not surprise me if Your

4     Honor, in Your Honor's upcoming status hearings, will hear

5     things like this.  But this is only becoming an issue that's

6     finally become ripe for the Court to hear about.

7          Number two, it's not like we haven't talked to Mr. Foy

8     at all.  And we're not seeking a hundred percent of the

9     discovery, but the amount of discovery that we've received

10    since our initial detention hearing in terms of video has been

11    pretty scant and that the things that we talked about in the

12    discovery letter are essentially all of the video that the

13    government's turned over since then.

14         What we need to do -- and, of course, as Your Honor

15    knows, this is a different case than most of these other

16    cases because of the defense that we're at least considering,

17    we need to be able to look at video camera of people who are

18    in that area, and we just don't have, and have not had, the

19    capacity to do that.

20         As the Court has seen from videos, there's a whole bunch

21    of other officers who are within a couple of feet from where

22    this is all going on, and we don't know who these officers

23    are.  So we have to go and we have to find it through this

24    database.  So the accessibility to the database is very

25    important.

1      I'm not playing games with the court, Your Honor.

2  I haven't had this kind of difficulty with any of the

3  prosecutors or any of the judges in any of my other cases

4  because when I say I need to look at it, I don't have the

5  prosecutor coming in and saying we need to set a trial date --

6  and again, I can't decide whether the government wants to

7  withdraw its plea offer or not, but I want to correct Your

8  Honor, because the Court used the word "reject."  We are not

9  rejecting the plea offer --

10           THE COURT:  But you are by virtue of the fact --

11           MR. OHM:  -- [indiscernible] --

12           THE COURT:  Wait.  Wait.  I'm going to interrupt

13  you.  Not accepting is tantamount to rejecting in certain

14  circumstances, and at the last status hearing on January 3rd

15  or 5th, or whenever it was, the government said we're going to

16  withdraw it at the next status, and I said fine, I'll set a

17  trial date if you're not going to take it at the next status.

18      Now, you can say we're not rejecting it, but the fact

19  that you're not accepting it is tantamount to rejecting it.

20  And you may have a legitimate reason for saying I just can't

21  advise my client, but again I point out -- you know what?

22  I don't have a role here.  I resolve discovery disputes, I set

23  a trial date, or I take a plea.  That's my role as of right

24  now.  And so if you're saying we just can't take it and the

25  government's saying it expires today, I'll set a trial date.

1      All I'm saying is that I don't think -- I haven't seen this

2   arise in any other case, and it appears to me that Mr. Cole

3   could have been better positioned to address the issues you're

4   raising had the issue been raised before.  Maybe it's a U.S.

5   Attorney's Office-wide problem with the site you're describing,

6   but again, as I said, I haven't had this arise at all in any

7   of the other cases I have.

8      So my position here is I'll ask Mr. Cole about the

9   discovery that you need, we're going to set a trial date,

10  and that's where we are.  Any further negotiation regarding

11  a plea offer, that's between you and the government.  I'm

12  not getting involved.

13     Mr. Cole, the items 1 through 7 in the letter dated

14  February 4th from Mr. Ohm, let me just address them

15  individually.

16     As he says, "As I mentioned in my email, the zip files from

17  Production 5 appeared to not have correctly uploaded to USAfx.

18  We believe are videos specific to our case.  Could you please

19  have your paralegal upload them again and identify what they

20  are?"

21     Has that been done, or if it hasn't, when do you think

22  that will be done?

23     MR. COLE:  Your Honor, I will double-check with

24  my paralegal today.  I have, I think, a better course,

25  Your Honor, for going through this.  I haven't had an

1    opportunity to digest the 2 through 7 fully because it

2    was filed so late.  I can look at it and go over any

3    particular issue and respond back in writing to Mr. Ohm

4    regarding these, but I just became aware of them on Friday

5    after 8:00.  So I think that's a better course.

6         THE COURT:  Okay.

7         MR. COLE:  And if he doesn't like my written response,

8    then he can broach it to the Court.  I think that'll be a

9    better way to proceed.  But as of Thursday, it was just

10   reloading something that's already been uploaded.  That's not

11   an issue, Your Honor.  That's simple.

12        THE COURT:  All right.  I'd like you to respond in

13   writing and copy the Court.  I'd like to get a copy of your

14   response in writing to the items 1 through 7.

15        MR. COLE:  Okay.

16        THE COURT:  How long do you think we need to get ready

17   for trial?

18        MR. COLE:  Your Honor, I would ask for a week or so.

19   If we start a trial, we start on Friday --

20        THE COURT:  These are not complicated items.  Can you

21   respond by Friday?

22        MR. COLE:  Okay.  I'll do everything I can out of

23   respect for this honorable court.

24        THE COURT:  Thank you.  If you can respond by Friday,

25   let's set this down for another status because I'm going out

1          of town on the 16th, and I want to have this wrapped up --

2          I want to have these issues dealt with before I go.

3                    MR. COLE:  Your Honor, if my jury trial goes, it'll

4          start on Friday.  How about Monday?

5                    THE COURT:  Monday's fine.

6                    MR. COLE:  The 14th.

7                    THE COURT:  Yes.  And let us set this for status --

8          I leave town on the 16th, so I'd like to set this on the 15th

9          for a status.  Can we do that?  Now, if you're in trial,

10         Mr. Cole, we'll do it another time, okay?

11                   MR. COLE:  All right.  That's fine, Your Honor.

12                   THE COURT:  Or we can work with Judge Moss to see

13         when he has a break in his trial or something.

14                   MR. COLE:  Yes, Your Honor.

15                   THE COURT:  Because all these trials, I know they're

16         all set, but things keep happening.

17                   MR. COLE:  I'm aware of that.  I stated that,

18         Your Honor, that it might not go, but we'll know today

19         at 2:30ish.

20                   THE COURT:  And so will I.  Let's set this down for

21         status -- I'm not usually here on Tuesdays, but I'm leaving

22         on Wednesday.

23                   MR. COLE:  Your Honor, are you going to be gone a

24         long time?

25                   THE COURT:  I'm going to be gone 12 days, but I'm

1    going to be working remotely.  But I prefer to do criminal

2    matters in the courtroom.  I could do it remotely.  I'm doing

3    a bunch of statuses while I'm there, so we could do it on the

4    23rd.  I have a ton of status hearings that day.

5         MR. COLE:  That'll be fine with me, Your Honor.

6    I just have a plea with Judge Kollar-Kotelly at 11 a.m.

7    I have a plea, and hers are particularly long, so I would

8    like a two-hour block.  So from 11:00 to 1:00.

9         THE COURT:  Don't worry.  I've got hearings all

10   morning.  Mr. Bradley, we need to take that plea off the

11   calendar for the 23rd, Grayson, so we can do that -- we can

12   do the status at 1:00 or 1:30 on the 23rd.

13        MR. COLE:  I would ask for 1:30, Your Honor.

14        THE COURT:  Mr. Ohm, Ms. Mullin?

15        MR. OHM:  Any chance we can do 2:00?  I have a one

16   o'clock that typically goes long.

17        THE COURT:  Okay.  Two o'clock.  So February 23rd at

18   2 p.m.  And with regard to assertion of your client's speedy

19   trial rights, Mr. Ohm, I understand you have continued to

20   assert them.  I also know that given the chief judge's

21   standing order, the current global pandemic, and the protocols

22   that we're following because of COVID, you know, your client

23   was not -- and the fact that he's released.

24       Now, had I kept him in jail, he certainly would be moved

25   up in the queue.  He does have a right to a speedy trial, and

1    you can assert it, and he has it.  But the fact of the matter

2    is, given our current situation, he's not going to trial

3    anytime soon.  We just don't have the capacity to do it,

4    and the interests of justice far outweigh his right to a

5    speedy jury trial in these current situations.

6        Now, I'm hoping in the coming months we won't have to do

7    voir dire in the Ceremonial Courtroom; we will have more jurors;

8    we won't have to have three courtrooms per trial; we won't have

9    to be using all the protocols we're using now.  Nobody wants

10   that more than I do, but that's where we are right now.

11       So I understand your assertion of your client's speedy trial

12   rights, but the reality is that your client wasn't going to

13   trial anytime soon regardless.  But I think we should set a

14   trial date because every time we wait a couple weeks, we have

15   fewer and fewer trial dates.

16       Mr. Bradley, what are we looking at?  Oh, I've got the

17   current calendar here.  We don't even have past -- we don't

18   have past the end of July.  Looking ahead, well, we do -- I

19   think we should go ahead and set it for August or September

20   with the hope that we'll be back to trying cases in our own

21   courtrooms.

22           MR. COLE:  Your Honor, I would respectfully request

23   a September date, September or October.  That would be my

24   request of this court.

25           THE COURT:  Mr. Ohm?  Mr. Ohm, do you have a position?

1          MR. OHM:  Sorry.  I'm just looking at my calendar,

2    Your Honor.  September's fine, Your Honor.

3          THE COURT:  Okay.  Let's set it for -- well, Monday

4    the 5th is Labor Day.  How about Monday the 19th?

5          MR. COLE:  That's fine with the government, Your

6    Honor, and I thank you.

7          THE COURT:  Mr. Ohm?

8          MR. OHM:  If that works for Ms. Mullin and Mr. Foy,

9    it works for me.

10          THE COURT:  All right.  Trial September 19, status

11    February 23 at 2 p.m.  Well, since the status is going to

12    be the 23rd, you have till Monday, Mr. Cole, if your trial

13    starts.  Just work out an extension with Mr. Ohm.

14          MR. COLE:  Okay.

15          THE COURT:  But I want to have this stuff dealt with

16    by the time we come back for status on the 23rd.  Okay?

17          MR. COLE:  I don't anticipate any problems, Your Honor.

18          MR. OHM:  Mr. Cole, if you could just email that to

19    me, that would be great.

20          MR. COLE:  We'll talk.  I didn't understand you,

21    Eugene.

22          THE COURT:  Hold on.  Given we just set a trial date,

23    there are outstanding discovery issues to be resolved, the

24    defendant is on pretrial release, and the current global

25    pandemic, including the chief judge's standing order, I do

1    find the interests of justice outweigh the defendant's right

2    to a speedy jury trial, and therefore I will exclude time

3    under the Speedy Trial Act from today's date till our next

4    hearing on September 23 at 2 p.m.

5        Is there anything else I need to address?

6        MR. COLE:  Not from the United States.  Thank you, and

7    have a wonderful day, Your Honor.

8        THE COURT:  Thank you.  Oh, how many days do you

9    estimate we'll need for trial, Mr. Cole?

10       MR. COLE:  I would say a week, just to be safe.

11       THE COURT:  A week not counting voir dire?

12       MR. COLE:  A week counting voir dire, jury selection

13   voir dire.  But that includes if our selection process is not

14   as --

15       THE COURT:  I know.

16       MR. COLE:  So I would say a week is good, Your Honor,

17   because sometimes it might be two days, as you know, or a day

18   and a half.  So a week, I believe, would be a good place.  I

19   don't think more than that, Your Honor, given the state of the

20   evidence.

21       THE COURT:  Mr. Ohm, for the defense case?

22       MR. OHM:  Your Honor, given that we don't know what

23   witnesses we have, or whether they exist at this point, I'm

24   not sure we could say.  But longer than normal, I would say.

25       THE COURT:  I would say six or seven courtroom days.

1          MR. COLE:  Yes, Your Honor.  Thank you.

2          THE COURT:  Okay.  I'll see you all on the 23rd.

3          THE DEPUTY CLERK:  All right.

4     Counsel, this honorable court stands in recess until

5     return of court.  Good day, everybody.

6          (Proceedings adjourned at 10:42 a.m.)

CERTIFICATE

I, BRYAN A. WAYNE, Official Court Reporter, certify that the foregoing pages are a correct transcript from the record of proceedings in the above-entitled matter. *


/s/ Bryan A. Wayne
Bryan A. Wayne


* PLEASE NOTE:

This hearing was taken via videoconference in compliance with U.S. District Court standing order(s) during the COVID-19 pandemic.  Transcript accuracy may be affected by the use of electronic technology, including but not limited to sound distortion or audiovisual interference.